150 So.2d 838 (1963)
Harry ELLIS, Jr., Plaintiff and Appellant,
v.
JOHNSON LUMBER COMPANY, Inc., Defendant and Appellee.
No. 797.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1963.
Rehearing Denied March 27, 1963.
Certiorari Refused May 14, 1963.
*839 Collings & Hunt, by Robert L. Collings, Lake Charles, for plaintiff-appellant.
Hall, Raggio & Farrar, by Thomas L. Raggio, Lake Charles, Charles Broussard, Sulphur, for defendant-appellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff, as administrator of the estate of Harry Ellis, Sr., deceased, originally filed this suit for workmen's compensation benefits and alternatively in tort for damages arising out of fatal injuries to Harry Ellis, Sr. while unloading his log truck at defendant's lumber mill. The workmen's compensation claim was subsequently abandoned. Defendant's motion for summary judgment dismissing the tort action was sustained. From said summary judgment plaintiff appeals.
In this petition plaintiff alleges that on August 25, 1960, Harry Ellis, Sr. drove his loaded log truck to defendant's lumber mill; that it was the custom and practice of defendant to use a "pettibone" machine (a large four-wheeled machine with forked lifts on the front, raised by hydraulic pressure, and sufficiently strong to move several logs at a time) to help the truck drivers unload their logs; that the pettibone machine was customarily used "to guide, brace and properly dump and/or unload log trucks at a place desired by the defendant."; that as Harry Ellis, Sr. began the unloading procedure, defendant's employee led him into the belief that the pettibone machine would be used to aid Ellis in unloading the logs from the truck; that the pettibone machine operator failed to act in such contemplated "team work" with Ellis, thereby placing Ellis in a position of peril from which he was unable to extricate himself; that Ellis relied on the pettibone machine to brace and guide the logs as they were unloaded; that the failure of the pettibone machine operator to furnish this customary assistance caused the logs to fall on Ellis and crush him, causing injuries from which he died about a year later.
In its answer defendant denies any negligence and alleges that the accident was caused solely by the negligence of the deceased in knowingly and willfully remaining in a position of danger beside the truck while releasing the chains and tripping the stakes which held the logs, allowing them to roll onto him. In the alternative, defendant alleges contributory negligence and assumption of the risk as a bar to plaintiff's recovery.
In support of its motion for summary judgment the defendant filed the deposition of Mr. Tam Ebert, the pettibone machine operator, who was the only actual eyewitness to the accident. This witness testified that the primary duty of the pettibone machine was to transport logs to the mill and keep the log yard in order. The procedure was for him to first carry the logs from the place where the trucks dropped them to a "log bank" from which he later moved the logs to the mill as needed. Ebert testified that it was the duty of each truck driver to unload his own logs and that he did not assist them unless they had some sort of unusual trouble such as logs failing to roll off the truck or logs falling so as to bind the truck or the stakes. Ebert stated that when this happened he would use the pettibone machine to move the rest of the logs from the truck or to move the truck about so as to free it from the fallen logs, but he did so only if the truck driver requested it and he was not engaged in his primary duties.
*840 Ebert stated that on the day of the accident, he was moving the pettibone machine toward the "bank" to obtain logs for the mill, when Ellis drove into the yard, blocking Ebert's path and causing him to stop 10 to 20 feet from Ellis's truck; that Ellis then released the chain which bound "three or four more extra logs up on the top * * *", leaving only the stakes holding these logs; that Ellis then proceeded to "trip" the stakes, and as the last stake was released, the logs rolled down on Ellis who was standing beside the truck in their path; that Ellis never did request the pettibone machine to help him and actually had never reached the point at which the machine ever assisted.
Defendant also filed the affidavit of Mr. John C. Corkram, a man of considerable experience in logging and sawmill business, who stated that it was the responsibility of the truck driver to unload his own logs and that the primary duty of the pettibone machine operator was to keep the log yard in order and supply logs to the mill. He did say that the pettibone machine would assist the truck drivers, on their request, when they had trouble with the logs.
Defendant also filed the affidavit of Mr. J. Howell Johnson, president of the defendant lumber company, who stated that he specifically advised Mr. Ellis it was the duty of the truck drivers to unload their own logs but that the pettibone operator, on occasions, when requested by the truck owners, would assist them as a matter of courtesy and in order to expedite the general operation.
In opposition to the motion for summary judgment the plaintiff filed only two affidavits. The first is an affidavit of plaintiff, Harry Ellis, Jr., which asserts that it was the "practice and habit" of the pettibone machine to aid the truck drivers in unloading and that the deceased relied on this customary assistance which was withheld.
The other affidavit filed by plaintiff is that of Willie Spears, a log truck driver of five years experience, who stated that it was the practice and duty of the pettibone machine operator of the defendant sawmill to help Spears and the other truck drivers unload and that this assistance was given more often than not. Spears stated further that "the operator often helped the driver as the driver unbound the stakes by putting the pettibone against the logs in anticipation of lifting the load of logs."
The first question is whether there is a genuine issue of material fact LSA-C.C.P. Article 966 is the statutory provision permitting defendant to move for summary judgment and states that "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Our learned brother below decided that there was no genuine issue of material fact and that under the law defendant was free of negligence. It is apparent that he did not have the benefit of the very recent case of Kay v. Carter, et al., La., 150 So.2d 27. This first expression of our Supreme Court on the summary judgment procedure, which did not become a part of our law until January 1, 1961, adopts certain fundamental principles which have been developed in the federal jurisprudence under Federal Rule 56. In the Kay case the Court held as follows:
"Those courts have laid down certain basic principles to be followed in connection with the use of Rule 56 to obtain summary judgments. As stated in Volume 6 of Moore's Federal Practice, Second Edition (numerous federal decisions are therein cited and discussed), in passing upon a motion for a summary judgment the purpose of permitting the court's examination of proffered materials extraneous to the pleadings is not that `of trying an issue but to determine whether there is a genuine issue of material fact to be tried' (page 2030); the burden is on the *841 mover to show that there is no genuine issue of fact (pages 2111, 2123 et seq.); and any doubt must be resolved against the granting of a summary judgment (pages 2114-2119). Incidentally, to a similar effect (and citing numerous federal decisions) is an annotation under Article 966 in West's Louisiana Code of Civil Procedure, it reading: `One who moves for summary judgment has burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to existence of such an issue is resolved against the movant. * * *'
"Again, in a summation of the holdings in the mentioned jurisprudence the same authority (Moore's Federal Practice), on pages 2120 and 2121, makes the following pertinent observations: `The above principles and decisions, most of which reversed the trial courts' grant of summary judgment, indicate that the trial courts had too freely granted summary judgment and allowed the procedure as an improper substitute for a live trial.
* * * * * *
"`While trial judges may feel that the appellate courts have unduly limited summary judgment and have often applied the Rule unrealistically, and some trial courts are still too prone to grant summary judgment, there is considerable evidence that the early and unsound trend in the trial courts has been checked and that district judges now recognize that summary judgments are to be cautiously granted. If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. * * *'"
See also Touchet v. Firemen's Insurance Company of Newark, New Jersey, 146 So. 2d 441 (3rd Cir. La.App.); McDonald v. The Grande Corporation, 148 So.2d 441 (3rd Cir. La.App.); Walmsley v. Gillmore, 144 So.2d 625 (4th Cir. La.App.); Jacobs v. Beck, 141 So.2d 920 (4th Cir. La.App.); Snell v. Intercoastal Airways, Inc., 139 So. 2d 70 (4th Cir. La.App.).
In Barron & Holtzoff, Fed.Practice and Procedure, Rules Ed. Vol. 3, Section 1232.1 it is stated that summary judgment will not usually be feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony. This certainly is the general rule, as shown by the many citations in this excellent text.
Plaintiff argues strenuously that the pleadings, depositions and affidavits on file do show there is a genuine issue of material fact as to the existence of a custom or practice whereby the pettibone machine assisted the truck drivers in unloading their logs and if so, the nature of that practice. We agree that a genuine issue of fact in this regard is present. As noted above, defendant's affidavits and deposition stated that the pettibone machine operator did not assist the truck drivers unless they requested him to do so and then only if the machine was not occupied in its primary task of taking logs to the mill; that even if the machine did assist in unloading the trucks, it did so only after the driver had unloosed his chains and tripped his stakes and was having trouble removing the logs or freeing his truck. On the other hand, plaintiff's affidavit, given by Mr. Spears, states that "the operator often helped the driver as the driver unbound the stakes by putting the pettibone against the logs in anticipation of lifting the load of logs." Thus there is an issue as to whether it was customary, when a loaded truck came into the yard, for the pettibone machine to be placed against the logs, for the purpose of holding them there, while the driver released the chains and tripped the stakes. This issue is material because if such a custom as plaintiff contends did exist, it certainly can be argued that the pettibone machine had the duty to perform this function at the time of the accident.
For the reasons assigned, the judgment appealed is reversed and set aside, the motion for summary judgment is overruled and the case remanded to the district court *842 for further proceedings. All costs in connection with the motion for summary judgment, as well as the costs of this appeal, are assessed against the defendant. Assessment of other costs shall await final determination of this suit.
Reversed and remanded.

On Application for Rehearing.
En Banc. Rehearing denied.