HOOD, Judge.
This is an expropriation proceeding instituted by Lake Charles Harbor and Terminal District to acquire a servitude running east and west across the center of an 80-acre tract of land owned by defendants. Plaintiff contends that it needs this servitude to enable it to construct and maintain a public road and a railroad over and across defendants’ property.
The defendants filed an answer alleging, among other defenses, that the proposed taking is not for a public purpose, and that it constitutes a deprivation of the property of defendants without due process of law, in violation of provisions of the federal and state constitutions. They demand primarily that all of plaintiff’s demands be rejected. Alternatively, they pray that the right of way be limited to a width of 50 feet, and further in the alternative, that they be awarded $100,000.00 as the value of the property taken and severance damages.
Plaintiff filed a motion for summary judgment, alleging that there is no genuine issue as to a material fact concerning the public use and necessity of the right of way, that the issues presented here as to the public use and need for the servitude and as to the constitutionality of the taking were determined in the case of Wright v. Lake Charles Harbor and Terminal District, 188 So.2d 449 (La.App. 3d Cir. 1966), and that plaintiff is entitled to summary judgment decreeing that it has the right to expropriate the servitude herein sought.
The case was tried on its merits, and thereafter a summary judgment was rendered by the trial court in favor of plaintiff, decreeing “that plaintiff has a right to expropriate the right of way herein sought.” The effect of the summary judgment is to hold that the servitude is being expropriated for a public purpose and that the taking is not unconstitutional. Judgment on the merits also was rendered at the same time, adjudicating the servitude to plaintiff, and awarding to defendants as compensation for the rights taken the sum of $9,675.00, with interest thereon from date of judicial demand until paid. Defendants appealed. Plaintiff has answered the appeal, demand *850 •ing that the amount of the award be reduced, and that the judgment be amended to allow interest on the award from the date ■of entry of the judgment rather than from ■date of judicial demand.
The 80-acre tract of land which is affected by this expropriation proceeding is located approximately one-half mile west of the •Calcasieu Ship Channel, in Calcasieu Parish. The southeast corner of this tract •touches the northwest corner of a 40-acre tract which plaintiff now owns, the plaintiff Raving previously acquired the last mentioned tract by means of an earlier, but separate, expropriation proceeding which it instituted against the defendant landowners. 'The last mentioned 40-acre tract is much -nearer the ship channel and it, together with •other adjoining tracts owned or being expropriated by plaintiff, are to be used by it •for the construction and maintenance of a 'bulk facility which is referred to here as a •“coke plant.” The servitude which plaintiff seeks to expropriate is 110 feet wide, .and the public road and railroad which it -proposes to construct on and along that •servitude is intended to provide access to .•and from that coke plant. The road and railroad will run from the 40-acre tract of land on which the coke plant is to be built, •over and across defendants’ property, and will connect with existing public roads and .a railroad at points west of the subject prop•erty. An oil refinery owned by Cities Service Oil Company, and some other industrial plants, are located within one or two miles west and southwest of the subject property,' and the road and railroad which plain-tiff intends to construct on the servitude •will provide access from the coke plant .to these industries, as well as to others.
One of the defenses alleged by defendants •is that the right of way being expropriated -is not needed by plaintiff for a public use, hut that on the contrary plaintiff intends to ■use it for the conduct of a private business, that is, for the construction and maintenance of a coke plant “for the benefit of -Cities Service Company, Cities Service International, Inc., and Societa Alluminio Veneto per Azioni.” They further allege that the taking constitutes a deprivation of defendants’ property without due procese of law, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, and in violation of Article 1, Sections 2 and 6, and Article 4, Section 15, of the Louisiana Constitution.
At the trial defendants attempted to introduce evidence tending to show that plaintiff originally selected another site as the “most feasible location” for the coke plant, but that that location was changed to this less desirable one because Cities Service Oil Company requested that it be relocated on defendants’ property. They also offered evidence tending to show that the location of the coke plant on the 40-acre tract southeast of defendants' property, and the construction of a road and railroad across the last mentioned property, would save Cities Service Oil Company considerable sums of money in transportation costs, that a contract has been entered into between plaintiff and Cities Service relating to the use of this bulk facility and that the revenues which plaintiff will derive from - that contract are such that the construction and maintenance of the coke plant is not economically feasible. And, finally, they tendered evidence which they contend would show that in the event the entire site for the coke plant or all of the servitude being taken here is not used by plaintiff, then “Cities Service Oil Company might buy the remainder from the Dock Board.” Plaintiff objected to all of this evidence, and its objections were sustained, the trial judge assigning as reasons for that ruling that the same issues were presented in the case of Wright v. Lake Charles Harbor and Terminal District, supra, and that they were resolved contrary to the position taken by defendants here. The trial judge noted that the decision in the Wright case was not res judicata, but he held that for the reasons which were assigned in that case plaintiff is entitled to a summary judgment here decreeing that the construction of the coke plant, and an access road and *851 railroad to it, are for a public use, and that plaintiff has a right to expropriate the servitude which it seeks in this proceeding. The trial judge also ruled that defendants have the right to contest the location of the servitude, and to try issues raised as to the value of the rights taken and as to the severance damages which are claimed by them. The case went to trial on its merits as to all of these last mentioned issues.
The defendants were not parties to the Wright case, supra. In that suit, a taxpayer seeking to obtain an injunction against the Lake Charles Harbor and Terminal District, attacked the validity of some Port Improvement Revenue Bonds and some Refunding and Improvement Bonds which the defendant proposed to issue. One of the principal grounds of the attack was that the proceeds from the sale of these bonds were to be used for the construction of the above mentioned “coke plant.” It was alleged that the construction of this coke plant was not for public use, that “it is intended to give advantage to a private industry at the taxpayers’ expense,” that it had already been leased to private firms, and that it is being constructed “chiefly for the advantage and benefit of Cities Service Oil Company.” It was also alleged that the lease of the coke plant constitutes a violation of provisions of the Louisiana Constitution. The defendant filed an answer, a reconventional demand and a motion for summary judgment. After trial on the merits, a summary judgment was rendered dismissing plaintiff’s suit. On appeal, we held that “the necessity and/or wisdom of the installation of the bulk facility rests in the sound discretion of the District through the Board of Commissioners unless such discretion was labeled arbitrary or capricious,” and we found that they had not been arbitrary or capricious. We also found that under the provisions of Article 14, Section 31, of the Louisiana Constitution, the Lake Charles Harbor and Terminal District has the right to construct a facility, such as this coke plant, and to lease it to private business interests. We concluded that “The issuance of these bonds is fully authorized' and also the purpose for which the money is to be used is constitutional.”
The record of the Wright case was introduced in evidence in the instant suit. We have examined that record and find that,, insofar as that action related to defendants’" contention that the property is not being taken for a public use or that the taking is-unconstitutional, substantially the same issues were presented in that suit as are-presented here. In Article 8 of that petition, Wright alleged that the District proposes to construct a coke plant, “and further proposes to acquire land, road and rail: rights of way. * * * ” His prayer for judgment included a demand that the District be enjoined from making any expenditures for those purposes. In that suit,, therefore, the plaintiff sought to enjoin the District from acquiring the right of way which is the subject of this litigation, and one of the grounds urged for that injunction was substantially the same ground as is-being urged here.
Defendants contend, however, that regardless of the issues which were considered' in the Wright case, there is a genuine issue of material facts in this suit, and thus that the trial judge erred in rendering a summary judgment without permitting them to-have a trial on the merits and to prove the allegations contained in their answers. They argue that there are material issues of fact as to “how the sites were selected, what the vested interest of the private concerns herein were, the terms and conditions under which private business would profit at a loss to the public,” and as to defendants’ allegation that the location of the coke plant was changed from the “most feasible location” to its present proposed site solely to-satisfy the desire of Cities Service Oil Company.
We agree that the summary judgment sought by plaintiff can be rendered only if the pleadings, the admissions on file and the admissible evidence show that there is no genuine issue as to a material fact, and *852 that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. A hearing held on a motion for summary-judgment is not a substitute for a trial, and the summary judgment procedure should be used only in those cases which clearly fall within the provisions of the Code of Civil Procedure relating to summary judgments. Grant v. Touro Infirmary, 169 So.2d 574 (La.App. 4th Cir. 1964); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); and Walmsley v. Gilmore, 144 So.2d 625 (La.App. 4th Cir. 1962).
The pleadings, depositions, the admissions on file and the evidence in the instant suit show that the Lake Charles Harbor and Terminal District has already acquired the land on which the coke plant is to be constructed, and that the location of that plant thus has been fixed. Actually, the 40-acre tract on which the major portion of the coke plant is to be constructed was acquired from the same defendant landowners in a separate contested expropriation suit. In the Wright case we held, in effect, that the coke plant was being constructed for a public use and that public funds could be used to construct it. Defendants urge here, however, that the coke plant is not being constructed for a public use and thus that plaintiff should not be permitted to expropriate a servitude to provide access to it. We agree that the decision in the Wright case is not res judicata as to the issues presented here, but we think, as did the trial judge, that on the undisputed facts the ruling in the Wright case should be applied here. And, we feel that the additional evidence which defendants sought unsuccessfully to introduce is immaterial to the question of whether plaintiff is entitled to expropriate the servitude which it now seeks.
We think it is immaterial, for instance, as to how the site for the coke plant was selected, or whether another site was chosen originally as the “most feasible location” and then changed at the request of officers of a privately owned industrial plant. Evidence tending to show that the location of the coke plant so close to the Cities Service refinery would save that company transportation costs would not constitute proof of the fact that the road and railroad were being constructed for private business purposes, and thus evidence to that effect would be immaterial to the issues presented here. The fact, if established, that that company later “might buy” unused portions of the land which had been acquired by plaintiff for the coke plant or for access to it would not be sufficient to establish that the taking of the servitude involved here is unnecessary or that it is being expropriated for private purposes. And, finally, the argument that the construction of the coke plant is economically unsound is based on the assumption that Cities Service Oil Company will be the only industry which will use that facility. There is no issue, however, as to the fact that the coke plant can be used as a bulk facility for other products, and that plaintiff expects to use it for other products and for other industries. As we pointed out in the Wright case, the economic soundness or wisdom of the installation of this bulk facility rests in the sound discretion of the District, and we have found no abuse of that discretion.
Our conclusion is that insofar as the public use of the coke plant and the constitutionality of the taking is concerned, there is no genuine issue as to a material fact. All of the issues which are presented here were considered in the case of Wright v. Lake Charles Harbor and Terminal District, supra. And, we agree with the trial judge that for the reasons which were assigned in the Wright case plaintiff is entitled to the summary judgment appealed from, as a matter of law.
With reference to the judgment which was rendered on the merits, defendants contend that the amount awarded to them by the trial judge as compensation for the property taken is inadequate and that the award should he increased to $11,029.50. *853 Plaintiff, in its answer to the appeal, contends that the amount of the award should be reduced to $7,375.00.
The property affected by the servitude comprises 3.87 acres. Four expert appraisers testified at the trial, two of whom .appeared in behalf of plaintiff and two testified for defendants. Each appraiser used the market data approach, and each described the prior sales which he considered as being comparable and on which he based his appraisal. Plaintiff’s appraisers valued the property at $1,875.00 and $1,900.00 per acre. The appraisers for the defendants valued it at $2,800.00 and $2,850.00 per acre.
In an earlier expropriation suit affecting the 40-acre tract on which the coke plant is to be located, the two appraisers who testified for plaintiff valued that 40-acre tract at $2,500.00 per acre, and the trial court ■concluded that that was the per acre value ■of that tract. These two appraisers ex■plained, however, that although that tract .adjoins the property involved here they considered defendants’ property in the instant ■suit as having a less value per acre because it was located further from the ship channel than was the 40-acre tract, and it was a larger tract and thus was less desirable for •commercial purposes. The appraisers for •defendants felt that the size of defendants’ property and its location with refer•ence to the ship channel did not have the •effect of reducing its value.
The trial judge concluded that the size .and location of defendants’ property did not justify a conclusion that it had a lower value per acre than the 40-acre tract, and he thus rejected the values placed on the property by plaintiff’s appraisers. On the other Rand, the trial judge found that the adjustments in comparable sales made by the appraisers who testified in behalf of defendants were unrealistic, and he thus was unwilling to accept the appraisals made by those experts. He concluded that the prop■erty involved in the suit had the same value per acre as did the 40-acre tract, or $2,500.-'00 per acre, and he awarded defendants the full fee value of the property so affected, being the sum of $9,675.00. Plaintiff contends that the trial court erred in holding that the subject property had a value in excess of $1,900.00 per acre, while defendants contend that the award should have been based on a land value of $2,850.00 per acre.
We have examined the evidence and are unable to say that the trial court erred in holding that the land affected by this expropriation had a value of $2,500.-00 per acre, or that the full fee value of the land should be awarded for the servitude which is being taken. We thus will affirm the award made by the trial court as compensation for the value of the rights expropriated.
The trial judge rejected defendants’ demand for severance damages. Defendants contend that he erred in doing so, and that the judgment should be amended to include an award of severance damages in the sum of $11,400.00.
The evidence shows that plaintiff proposes to construct and maintain a public road on and along the north 60 feet of the 110-foot right of way, and to construct and maintain a railroad on the south 50 feet of it. Defendants point out that prior to the taking the only access which they had to and from the 80-acre tract was by means of a private road leading to the north half of that tract. They contend that the construction of a railroad through the center of their property, and south of the proposed new road, without assurance that the defendants will have the right to cross that railroad, will have the effect of cutting off the south half of their property completely from ingress or egress. They claim, therefore, that the south half of their property will be damaged by the construction of this railroad.
Plaintiff takes the position that defendants did not have any legal means of access to and from any part of the 80-acre tract prior to the institution of this suit, and that *854 the construction and maintenance of a railroad across it, therefore, could not cause them any severance damages even if it did cut off access to the south half of their property. Plaintiff also argues that the building of the public road and railroad to and on this tract will greatly enhance its value, and that the enhancement in value will offset any severance damages which defendants may sustain. And, finally, plaintiff argues that the judgment rendered herein provides that defendants may cross the railroad, that the public road which plaintiff proposes to construct also will cross it near the east line of the property, and that defindants thus will have access to the south half of their property after the taking.
The evidence shows that prior to the filing of this suit, the only access available to defendants to and from their 80-acre tract was by means of a private road which traverses the northern portion of this tract and extends westward to a point where it joins a public road about one-fourth of a mile west of defendants’ land.
' The right of way for this private road is owned by Magnolia Petroleum Company. The record shows that defendants executed a deed on June 11, 1948, conveying to Magnolia a 50-foot right of way for a private road over and across the north 40 acres of defendants’ property. That deed contains a provision that “Grantors reserve the right to use said road for their private use and purposes; such use to be free of expense to grantors, but to be at their own risk.” It also stipulates that the right of way shall remain in effect so long as Magnolia continues to use the road in its operations, and that the right will terminate upon abandonment of the road by that company. The judgment rendered in the instant suit, provides that the servitude is adjudicated to plaintiff subject to certain limitations, among which is the provision that “Lake Charles Harbor and Terminal District pledges and binds itself to negotiate with the defendant landowners, at any future time, crossings of the herein described right of way area, that are decreed necessary by plaintiff and defendants, at the sole expense of plaintiff.”
Defendants argue that under the provisions of the right of way deed to Magnolia, and LSA-C.C. arts. 658 and 753, they have the right to use not only that portion of the private road which traverses their property, but also the part which connects their property with the public road. They also-argue that they have the right to use that road for industrial purposes, so long as it does not interfere with the use which the oil company makes of it.
Both of the appraisers for plaintiff felt that the construction of a public road and a railroad through the 80-acre tract would materially enhance the value of that property, and that this enhancement in value will more than offset any severance damage which defendants may suffer as a result of the construction of the railroad as proposed by plaintiff. The appraisers who testified in behalf of defendants feel that the south forty acres of defendants’ property will be damaged to the extent of ten percent of its value because of the fact that the railroad will cut off access to the south half of the original tract. One of defendants’ appraisers felt that this severance damage to the south forty acres would be partially offset by an enhancement in value of the north forty, while the other felt that there would be no enhancement in value of any part of the tract and thus-there would be no offset of severance damages.
The trial judge concluded that defendants did not have access to any part of their property for industrial development prior to the institution of this suit, and that they suffered no severance damage as the result of the taking or of the construction of a railroad.
We find it unnecessary to consider the question of whether the defendants had the right to use the private road which connects the north half of their property *855 with the public roads on the west. Prior to this expropriation, there was no access to this property by railroad. The only other possible means of access was by the above mentioned private road, and that at best was subject to some restrictions and limitations. The evidence convinces us that the value of defendants’ entire 80-acre tract will he substantially increased by the construction of a new public road and a railroad on that tract, connecting it with other public roads and a railroad on the west. We think this enhancement in value more than offsets any severance damage which may be sustained by the south 40 acres resulting from the location of the railroad, even if we assume that defendants will have no assured right to cross the railroad and that heretofore they had the legal right to use the above described private road for industrial and other purposes. For these reasons, we find no error in the conclusion reached by the trial court that defendants are not entitled to recover severance damages.
Finally, plaintiff in its answer to the appeal, contends that the trial judge erred in decreeing that interest on the amount of the award should run from date of judicial demand. In State, Through Sabine River Authority v. Woodard, 189 So.2d 601 (La.App. 3d Cir. 1966) and State, Through Sabine River Authority v. Miller, 189 So.2d 603 (La.App. 3d Cir. 1966) we held that interest on such an award is due from date of judicial demand. Writs were granted by the Supreme Court in both of those cases, limited to a consideration of the question of whether interest is due from date of judicial demand or from date of entry of the judgment. (See 249 La. 754, 190 So.2d 914; and 249 La. 755, 190 So.2d 914). The Supreme Court, however, has not as yet decided that issue. Unless and until the Woodard and Miller decisions are reversed, or amended, we feel that we should follow them. For that reason we find no error in that portion of the judgment appealed from which condemns plaintiff to pay interest on the amount of the award from date of judicial demand, until paid.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.