Dear Mr. Middleberg:
On behalf of the New Orleans Aviation Board (the "NOAB"), you requested the opinion of this office concerning a proposed project to be located at the New Orleans International Airport (the "Airport").
You advised that the present on-Airport parking garage was placed in service in 1989 and was financed with general airport revenue bonds, secured by the fees and charges paid by the airlines operating at the Airport (the "Airlines"). The NOAB now realizes that there is a need for additional on-Airport parking, as the capacity of the existing garage is being exceeded. The Airlines are very conscious of the level of fees and charges existing at the Airport and at other airports throughout the nation. In order to encourage the Airlines to operate as many flights as possible to and from the Airport, the Airlines and the NOAB desire to maintain the lowest rates and charges possible which are sufficient to operate the Airport appropriately. Accordingly, the NOAB devised a plan for providing an additional parking garage at the Airport which would not be financed by the NOAB and would not be paid for from rates and charges borne by the Airlines.
You further advised that the NOAB has decided to encourage private sector participation in the planning, financing, designing, constructing and operating of the Garage. The NOAB published a request for proposals (the "RFP") for the lease of the Airport land upon which the new garage was to be constructed by the lessee. The RFP included words substantially to the effect that the NOAB would not participate in financing the project. The RFP provided that the NOAB would lease the required site and the proposer would be responsible for the financing, design, construction and operation of the Garage and payment of rent to the NOAB. Upon termination of the ground lease, the Garage would become the property of the NOAB. The only response received was a joint proposal (the "Proposal") from a large national publicly-held parking operator and its disadvantaged business enterprise partner (the "Developer").
You further advised that the Garage will be financed with tax-exempt bonds to the amount allowed under the Internal Revenue Code (the "Code"). To permit tax-exempt bonds, the Developer proposed that it would cause to be incorporated a Louisianan non-profit membership corporation organized by it pursuant to the provisions of R.S. 12:201, et seq., which would be qualified as a 501(c)(32) organization pursuant to the Code and the regulations promulgated thereunder (the "Nonprofit"). The purpose of the Nonprofit would be the design, financing, construction and operation of the Garage.
Your first question is: Does Louisiana law allow a privateindividual to organize a non-profit corporation?
The Non-Profit Corporation Law is contained in R.S. 12:201, et seq. R.S. 12:202 specifically provides that "one or more natural or artificial persons capable of contracting may form a nonprofit corporation under this Chapter."
As stated in C.C. art. 24: "There are two kinds of persons: natural persons and juridical persons. A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership . . ."
Accordingly, Louisiana law specifically authorizes a natural person or private individual to form a nonprofit corporation.
Your second question is: May such a Louisiana non-profitcorporation have as its purpose the erection of buildings servinga public purpose such as the Garage for the Airport in order tolessen the burden of government?
R.S. 12:203(B)(2) provides that the articles of incorporation must set forth in "general terms, the purpose or purposes for which the corporation is to be formed, or that its purpose is to engage inany lawful activity for which corporations may be formed . . ." (Emphasis added) The general powers of a nonprofit corporation are set forth in R.S. 12:207, which provides in pertinent part as follows:
 A. A corporation shall have the power to perform any acts which are necessary or proper to accomplish its purposes as expressed or implied in the articles, or which may be incidental thereto.
 B. Without limiting the grant of power contained in subsection A of this section, it is hereby specifically provided that every corporation shall, subject to the provisions of subsection D of this section, have authority:
 * * *
 (4) In any legal manner to acquire, hold, use and alienate or encumber property of any kind, including monies and its own shares, subject to special provisions and limitations prescribed by law or the articles;
 * * *
 (6) To make contracts, to incur liabilities, to borrow money, to issue notes, bonds and other obligations, and to secure any of its obligations by hypothecation of any kind of property;
 * * *
 D. Except as otherwise provided in the articles or by-laws, a corporation may borrow money, purchase immovable property, or sell, lease, encumber or otherwise alienate any of its immovable property, only if a resolution so authorizing has been approval (sic) by the voting members at a regular or special meeting, convened after notice of its purpose. . . ." (Emphasis added)
Accordingly, if not limited by its articles of incorporation, a nonprofit corporation may be formed pursuant to Louisiana law for the purpose of engaging in any lawful activity for which corporations may be formed, which would include the construction of buildings serving a public purpose, such as an airport garage.
It should be noted that Op.Atty.Gen. 96-440 specifically found that the use of publicly owned property leased to a legislatively created corporation and subleased to a developer for the purpose of building parking and office facilities primarily for use by the state is for a "public purpose". That opinion citedCalcasieu-Cameron Hospital Service District v. Fontenot,628 So.2d 75 (La.App. 1st Cir. 1993), where the court held that an expropriation by a hospital service district for purposes of providing parking space needed by a state-operated hospital was a public purpose. The opinion also cited Lake Charles Harbor Terminal District v. Farquhar, 196 So.2d 847 (La.App. 3d Cir. 1967), where the court held that the expropriation of a parcel of land for purposes of constructing bulk storage facilities and access roads to these facilities was for a public purpose, even though the storage facilities were to be leased to private companies and a road being constructed on a portion of the land was to be used primarily to allow access for one particular private user. In Miller v. Police Jury of Washington Parish,74 So.2d 394 (La. 1954), the issue was whether the use of bonds to finance the purchase and construction of a milk processing plant to be leased to a private entity was for a public purpose. The court held that since the processing plant was found to be economically necessary to the citizens of the parish, the processing plant had a public purpose, even though the property was to be leased to a private entity which was to be the sole user of the facilities and the sole recipient of all profits derived from its activities conducted on the property.
While your opinion request mentions provisions of the Internal Revenue Code and IRC Regulations, no opinion is given by this office as to whether the proposed nonprofit corporation qualifies as a nonprofit under federal tax law.
Your third question is: Does the LCDA have the power and authorityto issue tax-exempt and taxable bonds for such a Louisiananon-profit corporation?
The Louisiana Local Government Environmental Facilities and Community Development Authority (the "LCDA") was created as a political subdivision of the State pursuant to R.S. 33:4548.1, et seq. R.S. 33:4548.6 provides that the LCDA is authorized to issue and sell bonds on behalf of any participating political subdivision or organization as provided in R.S. 33:4548.3(B)(2)(e). R.S. 33:4548.3(B)(2)(e) provides that an "authorized project" means a program, project, financing, and acquisition for the furtherance of economic development or other public functions or purposes of any political subdivision which shall include economic development, industrial, and manufacturing facilities, including facilities of organizations operating under Section 501(c)(3) of the Internal Revenue Code.
As set forth in R.S. 33:4548.6, if the bonds are issued on behalf of any participating political subdivision or organization as provided in R.S. 33:4548.3(B)(2)(e), the LCDA has the power and authority to issue the bonds. The LCDA has advised this office that the LCDA has issued bonds on behalf of several 501(c)(3) entities based upon the authority contained in R.S. 33:4548.6.
Your fourth question is: Is it legal for such a Louisiananon-profit corporation to lease property from a board of amunicipality?
As stated earlier, a Louisiana non-profit corporation is authorized to enter into contracts and in any legal manner to acquire, hold, use, alienate or encumber property of any kind, subject to approval of its voting members unless otherwise provided in the articles or by-laws of the corporation. Accordingly, and provided that nothing contrary is contained in the articles or bylaws, a Louisiana non-profit corporation has the authority to lease property from a board of a municipality.
Your fifth question is: Is it legal for the NOAB to lease propertyto such a Louisiana nonprofit corporation?
Assuming that the selection of the Developer was in accordance with the provisions of the Home Rule Charter and the City Code, the City is authorized to "lease all or any part thereof, to any person or corporation, public or private, upon such terms and conditions, and for such period of years as the New Orleans Aviation Board may deem advisable, after having received the approval of the city council." R.S. 2:351(D).
This opinion is limited to the specific questions presented. As stated earlier, no opinion is given on any matter of federal law, including federal tax law. This opinion also does not address whether the transaction is valid under the provisions of the Home Rule Charter of the City of New Orleans nor the City Code. We would also suggest that you review the proposed structure of the transaction with bond counsel to ensure that there is no violation of the provisions of the outstanding bonds.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH