150 So.2d 27

Stuart S. KAY

v.

Harold D. CARTER and Charles P. Kelley and Anna M. Kelley.

No. 46341.

Feb. 18, 1963.

E. M. Nichols, Nichols & Drewett, Lake Charles, William C. Pegues, III, DeRidder, for relators-defendants.

Joe J. Tritico, Lake Charles, Jones & Jones, Baton Rouge, for respondent-defendant.

HAMITER, Justice.

Certiorari was granted in this concursus proceeding in order that we might review a decision of the Court of Appeal, Third Circuit, which affirmed a district court decree sustaining a motion for a summary judgment filed (as herinafter shown) on behalf of one of the defendants. See 142 So.2d 836.

From the pleadings and annexed documents (on all of which the mentioned motion was solely predicated) it appears that on July 12, 1961 Charles P. Kelley entered into a written agreement to sell to Harold D. Carter certain lands, with improvements thereon, situated in Beauregard Parish. At the same time Carter, as stipulated, deposited with Stuart S. Kay (Kelley's then attorney) the sum of $500 to apply on the purchase price.

The written contract contained the following other pertinent stipulations: "Seller agrees to deliver to purchaser a complete abstract of title to said property within ten (10) days from date of acceptance of this agreement and purchaser shall have ten (10) days from delivery of abstract for examination of title. * * * If the said title is defective, seller shall have thirty (30) days from notice of said defects to remedy same * * *. If the defects can not be remedied, the cash payment noted herein shall be returned to the purchaser and this contract thereby terminated. * * *

"If purchaser fails to comply with this agreement, seller shall have the option to retain said cash payment as liquidated damages, or to require specific performance."

The abstract was timely furnished; and on or about July 28, 1961 Stuart S. Kay (attorney for Kelley) received a written opinion from J. B. Jones, Jr., (attorney for Carter) which noted some thirty-two asserted defects in the title to the lands involved and set forth numerous requirements for remedying them. Among those listed

were certain recorded mineral reservations and leases and grants for the establishing of roads, most of which rights were held by the Long-Bell Petroleum Company and its affiliates. The opinion noted also that the title is presently in Anna M. Kelley (wife of the seller, Charles P. Kelley, as her separate and paraphernal property).

In response to the opinion Kay, through a letter of August 11, 1961, notified Jones that some of the requirements were either impossible or impractical to meet. The remainder, he said, could be complied with, but that for complying according to the suggestions furnished to him additional time would be needed; and he requested a time extension.

Subsequently, on August 22, 1961, Kay (for his client Kelley) wrote to Jones stating that steps had been taken, particularly with respect to the possible claims of the Long-Bell companies, which had rendered the title merchantable; and in proof thereof he tendered certain instruments. Rejecting the title thus offered, and demanding a return of the $500 initially deposited by him with Kay, Carter (through his attorney Jones) took the position that there remained substantial and uncorrected defects.

Thereupon, Kay placed in the registry of the court the $500 which he held in escrow and instituted this concursus proceeding. In the petition, to which the described written contract was attached, he prayed that Carter, Kelley, and the latter's wife, be cited to appear and "to assert their respective claims to the fund herein deposited * * *."

The defendants answered and set forth the facts, substantially as outlined above, which preceded the commencement of the litigation. Additionally, the Kelleys alleged that the title tendered was merchantable, and Carter averred that it was not; the aforementioned correspondence was attached to the pleadings; and the Kelleys and Carter each asked to be awarded the $500 placed in the registry of the court by Kay. Also, the Kelleys prayed for a judgment ordering specific performance of the agreement to purchase. (The prayer for specific performance, along with the allegations relative thereto, was stricken from the answer of the Kelleys pursuant to a motion by Carter.)

Thereafter, Carter moved for a summary judgment, he relying solely on the pleadings (together with the annexed documents) and invoking Article 966 of the Louisiana Code of Civil Procedure which provides in part: "The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. * *

"* * * The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be ren-

dered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."

As we have heretofore noted the district court sustained the motion for a summary judgment filed by Carter; it decreed him to be the owner of the funds in question; and the Court of Appeal affirmed the rulings.

From the foregoing recitation it is apparent that the issue presently posed for determination is whether the pleadings and annexed documents show with certainty that the Kelleys had no merchantable title to convey to Carter within the thirty-day period provided for in the agreement to sell and purchase. The Kelleys maintain that such is not shown. They contend that at least there is disclosed the existence of a genuine dispute as to material fact, particularly in view of their assertions that the proof timely obtained and tendered cured all defects and rendered the title merchantable.

■ In deciding the mentioned issue consideration should be given to certain principles of law that are often employed in specific performance actions for determining whether or not titles are merchantable. In this connection we pointed out in Schaub et al. v. O'Quin, 214 La. 424, 38 So. 2d 63 (a specific performance suit) that not all seeming defects render a title unmerchantable, especially those based on objections which are obviously groundless; it is when there are outstanding rights in third persons (not parties to the action) who might thereafter make claims of a *substantial* nature against the property, and hence subject the vendee to *serious* litigation, that the title is deemed not merchantable.

■ The proceeding authorized in Louisiana Code of Civil Procedure, Article 966 et seq. concerning summary judgments is an innovation in our practice, and there is virtually no jurisprudence from the courts of this state relating to it. However, it was adopted with only minor, immaterial variations from Rule 56 of the Federal Rules of Practice; and, consequently, we are justified in considering the jurisprudence of the federal appellate courts pertaining to its proper application.

■■ Those courts have laid down certain basic principles to be followed in connection with the use of Rule 56 to obtain summary judgments. As stated in Volume 6 of Moore's Federal Practice, Second Edition (numerous federal decisions are therein cited and discussed), in passing upon a motion for a summary judgment the purpose of permitting the court's examination of proffered materials extraneous to the pleadings is not that "of trying an issue but to determine whether there is a genuine issue of material fact to be tried" (page 2030); the burden is on

the mover to show that there is no genuine issue of fact (pages 2111, 2123 et seq.); and any doubt must be resolved against the granting of a summary judgment (pages 2114–2119). Incidentally, to a similar effect (and citing numerous federal decisions) is an annotation under Article 966 in West's Louisiana Code of Civil Procedure, it reading: "One who moves for summary judgment has burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to existence of such an issue is resolved against the movant. * *"

Again, in a summation of the holdings in the mentioned jurisprudence the same authority (Moore's Federal Practice), on pages 2120 and 2121, makes the following pertinent observations: "The above principles and decisions, most of which reversed the trial courts' grant of summary judgment, indicate that the trial courts had too freely granted summary judgment and allowed the procedure as an improper substitute for a live trial. * * *

"While trial judges may feel that the appellate courts have unduly limited summary judgment and have often applied the Rule unrealistically, and some trial courts are still too prone to grant summary judgment, there is considerable evidence that the early and unsound trend in the trial courts has been checked and that district judges now recognize that summary judgments are to be cautiously granted. If there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial. * * *"

Furthermore, in the Official Revision Comments relative to Louisiana Code of Civil Procedure Article 966 it is stated: "Under the 1870 Code of Practice there is no counterpart to the motion for summary judgment. Even though, in all probability, it will not be successfully utilized often, the availability of the device and its potential for expeditious disposition of frivolous, but well pleaded, demands and defenses should go very far in discouraging such demands and defenses." This comment seems to indicate that the primary purpose of the procedure in question is to minimize the judicial urging of frivolous claims.

Of course, the respective general allegations of these litigants that the Kelleys did or did not have a merchantable title at the end of the specified thirty-day period are not those of fact; they are but mere conclusions of the pleaders. Whether or not a merchantable title then existed is the legal question to be ultimately determined in this concursus proceeding.

Carter, in urging that the defective title was not corrected, places much emphasis on a statement made in Kay's letter of August 11, 1961 that he (Kay) would need an extension of time for undertaking the required curative work. But we do not interpret that statement as a concession

by him that all of the work suggested (by Jones) was necessary. A reading of the letter in its entirety and in connection with other correspondence clearly indicates that Kay was merely offering, if given additional time, to undertake to supply all of the requested data in order to make the vendee feel as secure as possible in the transaction, even though he was of the belief that a large portion was not needed.

■ After a careful examination of the pleadings and annexed documents we entertain considerable doubt that there exists no genuine issue of material fact between the Kelleys and Carter and, hence, are of the opinion that the latter is not entitled presently to a judgment as a matter of law. As pointed out above the record before us shows that Carter is asserting substantial title defects which he claims were not cured; whereas, the Kelleys are insisting that the proof timely obtained and tendered by them rendered the title merchantable, assuming it was defective initially.

Therefore, we have concluded that a summary judgment in this matter was not proper and that the cause must be remanded to permit the respective litigants to introduce admissible evidence, consistent with their pleadings, to show whether or not the Kelleys had a merchantable title on the date agreed upon in their contract of July 12, 1961. Incidentally, we refrain from specifically fixing that agreed date

for the reason that the pleadings do not make certain what it was. On the remand it can be definitely determined.

The Kelleys (through their attorneys) have argued here that we should reverse the interlocutory ruling of the district court which struck from their answer a demand for specific performance of the agreement; and that we should now direct that court to recognize and enforce such demand if it should be determined, after a trial of the merits on the remand, that they are entitled to the funds on deposit. The question of the correctness of the ruling, in our opinion, has passed from the case. In their specifications of error to the Court of Appeal the Kelleys made no complaint of it. Moreover, in their application submitted here for the writ of review they state that their demand for specific performance was " * * * stricken from the pleadings, and is not presently at issue before this Court" and that the " * * * only issue presented in this controversy, and to be considered in this application is: Are there any issues of fact which would preclude the granting of a motion for summary judgment upon the pleadings alone as reflected by this record?"

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, the motion for a summary judgment is overruled, and the case is remanded to the district court for further proceedings.

according to law and consistent with the views herein expressed. All costs incurred in connection with the motion for a summary judgment shall be paid by Carter. Assessment of other costs is to await the final determination of the litigation.

FOURNET, Chief Justice (dissenting).

A study and analysis of all the pleadings and facts in this case, including the documents attached thereto, convince me the Court of Appeal was correct in affirming the judgment of the lower court granting the motion of defendant, Harold D. Carter, for a summary judgment decreeing him to be the owner of the $500 on deposit with the clerk of court in these proceedings.

The Court of Appeal, following the well established jurisprudence of this state, aptly observed that Carter, under the contract to purchase from the Kelleys was entitled to receive a complete, valid, unclouded title, and could not be compelled to accept one with any claim having a substantial basis and therefore suggestive of litigation.

The author of the opinion then pointed out that the contract provided in clear and unambiguous language that a thirty-day period was allowed the seller in which to perfect title, consequently there are no issues of fact regarding this provision in the contract which would require a hearing. The Kelleys failed to timely cure the several substantial imperfections involving

third persons not parties to this action who obviously could not be affected by any judgment rendered herein, thus leaving the property subject to future serious litigation.

I must, therefore, respectfully dissent.