SARTAIN, Judge.
Plaintiff-appellant, Ida Mae Jackson Coleman, appeals from the decision of the trial judge sustaining a motion for summary judgment filed by defendant-appellee, Temple Taxi Service, Inc., dismissing the claims of said plaintiff against said defendant.
Plaintiff originally filed suit for workmen’s compensation benefits on behalf of her minor daughter, Veronica Marie Jackson, as a result of the death of the latter’s *123 father, Theodore Jackson, an alleged employee of Temple Taxi Service, Inc. and Leon M. Harriel. Prior to the hearing on the motion for summary judgment filed by Temple Taxi Service, Inc., the plaintiff, on behalf of her minor child, entered into a compensation settlement with the defendant, Leon M. Harriel.
Disposition of the matter before us turns upon whether decedent was at the time of his death an employee of Temple Taxi Service, Inc., or an employee of a contractor who contracted to perform a part of the trade, business, or occupation of Temple Taxi Service, Inc. within the meaning of LSA-R.S. 23:1061 or an independent contractor within the meaning of LSA-R.S. 23:1021(6) who spent a substantial amount of his working hours in the performance of manual labor in conformity with the terms of a contract executed on behalf of Temple Taxi Service, Inc.
The record before us consists of the depositions and affidavits of Thomas Buffington, manager of Temple Taxi Service, Inc. and Leon M. Harriel which were filed in support of the subject motion and the affidavit of Idell K. Johnson which was filed in opposition to the said motion.
On October 11, 1966 Theodore Jackson was involved in a fatal automobile accident while driving a 1966 Chevrolet owned by Leon M. Harriel. The said Chevrolet was used as a taxi and was operated out of a taxi stand owned and operated by Temple Taxi Service, Inc. The record discloses that Harriel employed decedent to operate his taxi under an agreement whereby Harriel received 65% and decedent received 35% of the gross revenue which accrued as a result of the operation of Harriel’s automobile. Decedent reported regularly to the Temple Taxi Stand, took his place in line with nine taxis owned by Temple Taxi Service and upon receiving instructions proceeded to pick up various passengers. Harriel, the owner of the 1966 Chevrolet driven by decedent, paid to Temple Taxi Service, Inc. the sum of $15.00 per week for the right to use the Temple Taxi Stand and receive the benefit of the latter’s dispatching service. Temple Taxi Service, Inc., exercised no supervision or controls over the activities of the taxi owned by Harriel and driven by decedent other than to give to decedent his pro rata share of calls as they were received by Temple. This fact is illustrated by the testimony of Harriel taken by deposition, which is as follows:
“Q. What kind of control if any did the Temple Taxi Service have over your unit?
A. None at all.
Q. Other than dispatching you mean?
A. Well, the dispatcher tell the driver where to go, but that’s all. But so for as the Temple having control over my car, they did not.”
Thomas Buffington, manager of Temple Taxi Service, Inc. corroborated the testimony of Harriel when he deposed as follows:
“Q. Did you have any — by you I mean you or your employees — did you have any direct supervision or control over the cab of Leon Harriel or the cabs of other operators not owned by you or your company?
A. No, the owners supervised their cabs; they were always right there at the stand. All the independent operators supervised their own cabs and employees.
Q. Do the independent operators, such as Leon Harriel, report at this stand when they choose to report, that is, whenever they want to?
A. That’s right. You mean report to work?
Q. Yes.
A. That’s right.
*124 Q. They can either report or not, is that what you—
A. That’s correct.
Q. Are you interested in anything more than collecting your $15.00 a week from these independents?
A. That’s all.”
The taxi was operated under a license obtained by Harriel from the City of Baton Rouge. Regular reports to the City concerning the operation of the taxis were submitted by Harriel. The City taxes on the vehicle were paid by Harriel as well as all other expenses incurred as a result of its operation.
The affidavits and depositions of Buffington and Harriel clearly show that decedent was an employee of Harriel and not Temple Taxi Service, Inc. The rental agreement between Harriel and Temple Taxi Service, Inc. whereby Harriel secured the use of Temple’s Taxi Stand did not create an employer-employee relationship between Temple Taxi Service and the decedent or that of contractor-subcontractor between Temple Taxi Service and Harriel. The depositions and affidavits of Buffing-ton and Harriel are mutually corroborative in every respect.
The only affidavit in opposition to the motion for summary judgment and which can be construed as contradictory to the aforementioned supportive evidence and thus creating a genuine issue of fact is that of Idell K. Johnson, the mother of decedent. Her affidavit is very short and we quote in full its two paragraphs:
“She is the mother of the decedent Theodore Jackson who died on February 11, 1966; she and her deceased son were very close and she saw the said Theodore Jackson frequently and at least several times per week for several years immediately preceding his death; she knew that he was employed as a taxi-cab driver; that she had on many occasions seen him drive to her home in a taxi-cab; that specifically she saw her son approximately two days before he was killed and at that time he was driving a taxi-cab;
When she saw her son two days before he was killed he was driving a taxi-cab bearing signs which said ‘Temple Taxi Service;’ She believes that her son had been driving this taxi-cab for some time prior to his death, and believes it is the same taxi-cab in which her son was killed.”
Granting to the aforementioned affidavit of Idell K. Johnson the liberal interpretation to which it is entitled, we must hold as did the trial judge that the same does not create a genuine issue of fact because the said affidavit does not state anything other than the fact that two days before the decedent’s death the said affiant observed decedent driving a Temple Taxi.
The purpose of the motion for summary judgment as provided for in LSA-C.C.P. 966 is to provide a procedural device to determine, prior to the trial of a case, whether there is or is not a genuine issue of fact. Such a burden rests with the mover and if there exists any doubt as to whether there are material facts over which there is a genuine dispute, a trial on the merits is to be preferred to summary judgment. Kay v. Carter, 243 La. 1095, 150 So.2d 27; Landrum v. United States Fidelity & Guaranty Co., La.App., 151 So.2d 701 and Cheramie v. La. Power & Light Co., La.App., 176 So.2d 209.
Considering the above and foregoing recited facts and applicable authorities we are of the opinion that the trial judge correctly granted the motion for summary judgment and that his decision should be affirmed at appellant’s costs.
Affirmed.