671 So.2d 1176 (1996)
Justin JONES, Plaintiff-Appellant,
v.
AIRPORT SYSTEMS INTERNATIONAL, Defendants-Appellees.
No. 28,278-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*1177 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for Plaintiff-Appellant.
"Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for Defendant-Appellee, New Orleans Internat'l Airport.
Walker, Passman & Michiels by Kay Michiels, Alexandria, for Defendant-Appellee, United Airlines.
Before NORRIS, BROWN and STEWART, JJ.
NORRIS, Judge.
The compensation claimant, Justin Jones Sr., appeals a summary judgment order declaring that two defendants, The New Orleans International Airport ("NOIA")[1] and United Airlines ("United"), are not his principal employers under La.R.S. 23:1061 A and thus not liable for his weekly and medical benefits. We affirm.

Factual and procedural background
In 1990 the City of New Orleans decided to renovate Concourse "C" of its airport and awarded the contract for this work to Grimaldi Construction Co. for $10.6 million. According to the summary judgment evidence on file, the work that gave rise to this controversyremoving a passenger bridge at Gate 12C, refurbishing it and reinstalling it after the concourse renovations were complete was not included in the contract. Because Gate 12C was used by United, NOIA allowed United to perform this project instead of amending its contract with Grimaldi.
Airport Systems International ("ASI") was a small company in Monroe that provided *1178 services to airports and airlines on passenger loading bridges and conveyor systems. ASI also had an office near NOIA and was available to do emergency repairs and maintenance work for United.[2] As of February 26, 1992, however, ASI had no contract with either United or NOIA to perform any work. Nevertheless, ASI's president, Richard Telford, became aware at some point that one of the passenger bridges would have to be removed from Gate 12C, taken to the shop, refurbished and installed at a new location in the renovated concourse. He also knew that the Gate 12C bridge was virtually out of service, the gate itself being used only to park a plane overnight. Mr. Telford decided to do some "experimental painting" on the bridge, instructing his employees to sandblast it and try various paints in patches on the raw surface. He wanted to determine which one performed best in a tropical climate, as he hoped to do jobs at NOIA and elsewhere.
Before he began the experimental painting, Mr. Telford got permission from NOIA's assistant director of planning, George Groh, who agreed to let him do it as long as NOIA was not charged for it. Mr. Telford stated in deposition that he also cleared the experimental painting with United's station manager.
The plaintiff, Justin Jones Sr., was a welder for ASI. Sandblasting the Gate 12C bridge for the experimental painting project on February 26, 1992, he attempted to move a piece of equipment and allegedly injured his back. He reported the accident to Mr. Telford the next day and filed the instant comp claim against ASI in May 1992.
ASI submitted a bid and ultimately received the contract from United to refurbish the Gate 12C bridge; this was signed in May 1992. The contract required, among other things, that the exterior of the passenger bridge be completely sandblasted and repainted with three specific coats. ASI was paid for this work, but received no extra remuneration for the experimental painting it had performed in February.
Several months after Jones filed this claim against ASI, Mr. Telford learned that his compensation carrier (Presidential Fire & Casualty Co.) had gone bankrupt. Jones joined United and NOIA as defendants by supplemental and amending complaints in February 1993 and February 1994 respectively.[3]
Early in the proceedings Jones filed a motion for summary judgment, seeking to be declared a statutory employee of United's, and United filed a contrary motion for summary judgment, seeking to have him declared not a statutory employee. In March 1994 the hearing officer dismissed both motions, citing an abundance of genuine issues of material fact.
In July 1994 NOIA and United both filed motions for summary judgment, seeking a declaration that they were not Jones's principal employers, or that Jones was not their statutory employee. Jones formally opposed these motions. The matter was submitted to the hearing officer in March 1995. In support of its motion, NOIA filed copies of its accounting records and ASI's billing documents from late 1991 and early 1992; affidavits of Mr. Groh, NOIA's Assistant Director of Planning and Development, and of Calvin Aguillard, head of purchasing; and the deposition of Mr. Telford, ASI's president. In support of its motion, United filed depositions of Mr. Telford and of Harold T. Jeter, United's General Manager of Customer Services at NOIA. In opposition to the motion Jones filed the Grimaldi contract and portions of Mr. Telford's deposition. Jones also filed copies of discovery requests in which Jones sought from NOIA copies of any additional contracts between NOIA and United *1179 Airlines, together with NOIA's responses that there were none.
While the hearing officer's decision was pending, the Louisiana Insurance Guaranty Association filed an answer on behalf of ASI's defunct compensation carrier, Presidential Fire & Casualty.[4]
The hearing officer granted NOIA's and United's motions for summary judgment by order dated May 30, 1995. Jones has appealed this order.

Applicable law
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine factual dispute. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Ouachita Nat'l Bank in Monroe v. Gulf States Land & Dev. Inc., 579 So.2d 1115 (La.App.2d Cir.), writ denied 587 So.2d 695 (La.1991). The motion should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Thornhill v. Black, Sivalls & Bryson Inc., 394 So.2d 1189 (La.1981). In determining whether all material issues have in fact been resolved, the court should extend all reasonable doubt against the granting of the summary judgment and in favor of a trial on the merits. Penalber v. Blount, 550 So.2d 577 (La.1989).
The mover bears the burden of establishing that there are no genuine issues of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially assure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, supra; Kirkland v. Riverwood Int'l USA, 26, 741 (La.App.2d Cir. 6/21/95), 658 So.2d 715, writ granted 95-1830 (La. 11/3/95), 661 So.2d 1370. Materiality is also a relative concept defined and circumscribed by the substantive law applicable to the case. Kirkland v. Riverwood, supra.
Appellate courts review summary judgments de novo, using the same criteria applied by the hearing officer in determining whether summary judgment is proper. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992).
The liability of a principal employer for the employees of its contractor (called "statutory employees") is regulated by La.R.S. 23:1061 A:

When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him[.] * * * The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work. (emphasis added)
This section encompasses two theories of establishing a principal's comp liability: (1) contracting by a principal with another for the execution of work which is part of the principal's trade, business or occupation, or (2) contracting by a principal with another to perform all or any part of the work which the principal is contractually obligated to perform (the "two contract" theory). Freeman v. Moss Well Serv. Inc., 24,501 (La. *1180 App.2d Cir. 2/24/93), 614 So.2d 784, writ denied 93-0810 (La. 4/30/93), 618 So.2d 413.
Even when there is a contract between the principal and contractor, the work undertaken by the contractor may still be found not to be part of the principal's trade, business or occupation and thus the principal is relieved of comp liability (and exposed to tort liability). See, e.g., Thomas v. State, Dept. of Transp. & Dev., 27,203 (La.App.2d Cir. 10/12/95), 662 So.2d 788; Malone & Johnson, Workers' Compensation Law & Practice § 126, p. 266 (West, 1994). However, in the absence of a contract for work to be done there is no liability under this statute. Malone Young v. Petty Stave & Lumber Co., 7 La.App. 90 (2d Cir.), reh. denied 7 La.App. 294 (1927).

Discussion
By two assignments of error Jones urges the hearing officer committed legal error in failing to find him the statutory employee of United and NOIA. His first argument is that material issues of fact remain, precluding the finding that his employer, ASI, did not have a contract with United and NOIA. He next argues that NOIA or United (or both) entered a general contract with Grimaldi for certain work, that Grimaldi subcontracted it to ASI, and that as ASI's employee he was injured while performing it; thus, he contends, all three (NOIA, United and Grimaldi) were his principal employers. This being the case, he urges, the hearing officer was bound to apply the "totality of the circumstances" test to determine statutory employment, but that such a determination is virtually never appropriate in the context of a summary judgment. Kirkland v. Riverwood Int'l supra; Griffin v. Wal-Mart Stores Inc., 27,567 (La.App.2d Cir. 11/1/95), 662 So.2d 1042, writ denied 95-3100 (La. 2/16/95), 667 So.2d 1059.
Recovery of benefits under § 1061, under whatever theory, depends on a finding that the principal "undertakes to execute any work * * * and contracts with any person * * * for the execution" of that work. As stated by Professors Johnson and Malone, "Of course, there must be a subsisting agreement between the alleged principal and contractor." Op. cit., p. 249. Each of the cases cited by Jones in which statutory employment was litigated clearly shows the existence of a subsisting contract. Kirkland v. Riverwood, supra; Griffin v. Wal-Mart Stores, supra; Trahan v. State through Dept. of Health & Hosp., 95-320 (La.App. 3d Cir. 10/4/95), 663 So.2d 242; Rodgers v. James River II, 94-1807 (La.App. 4th Cir. 9/28/95), 661 So.2d 173.[5]
We have closely reviewed the summary judgment evidence and find that it leaves no reasonable doubt that NOIA and United did not undertake the work of refurbishing the Gate 12C bridge and did not contract that work to be performed in February 1992. Mr. Jeter, United's general manager, stated repeatedly in deposition that there was no contract between United and ASI for the work ASI was performing in February 1992. Mr. Groh, NOIA's assistant director of planning and development, similarly established by affidavit that NOIA had no contract with anyone regarding the work in which ASI was engaged on February 26. Mr. Telford denied the existence of any contract between ASI and the alleged principals in February 1992 several times. See, e.g., R. pp. 458, 474. He also testified that the refurbishing of this bridge was not included in NOIA's contract with Grimaldi. R. pp. 482.
In support of the alleged contract, Jones various cites documents which, even by indulgent reading, fail to show any contract for this work in February 1992. In further support, Jones cites his own affidavit in which he claimed he was sandblasting "pursuant to ASI's verbal agreement with United." However, affidavits must be based on personal knowledge. La.C.C.P. art. 967; Ouachita Nat'l Bank v. Palowsky, 570 So.2d 114, 120 (La.App.2d Cir.1990). It is not shown that Jones, a welder, had any personal knowledge *1181 of discussions between Mr. Telford and anyone at United; his affidavit is therefore incompetent to prove a contract. In further support, Jones contends that ASI was ultimately paid for sandblasting. However, the contract for the work that authorized this payment did not arise until May 18, 1992, some three months after Jones's injury, and it is perfectly clear that had ASI not subsequently secured the contract with United, ASI would not have been paid for the experimental work in which Jones was allegedly injured.
Finally, Jones asserts that ASI's president "had a direct oral agreement with" the alleged principals in that the "Airport verbally gave Telford the green light to proceed with the sandblasting." We reject this characterization of Mr. Telford's relationship with United and NOIA. The summary judgment evidence clearly shows that the experimental painting, with its concomitant sandblasting, was performed only to serve ASI's interest in possibly securing a contract with airlines at NOIA or in other tropical environments. The fact that United and NOIA may have permitted test procedures on their premises does not equate with "undertaking" that work and "contracting" with ASI to perform it. The consent shown in this case does not supply the statutory requirement of a contract or agreement which could make the owner a principal employer liable for workers compensation.
In sum, the summary judgment evidence shows that United and NOIA did not undertake to perform sandblasting on this particular bridge and contract for the execution of that work at the time of Jones's injury, thus foreclosing every genuine issue of material fact. Neither the "principal theory" nor the "two contract" theory of R.S. 23:1061 A applies to make United and NOIA principal employers, and they are entitled to judgment as a matter of law.
By his second assignment Jones urges the hearing officer erred in not applying the "totality of circumstances" test to determine whether the work being performed was part of the principal's trade, business or occupation. However, we have concluded that the experimental painting and sandblasting in which Jones was allegedly injured was not pursuant to any work undertaken by the alleged principals and contracted by them. Thus the issue of whether the contracted work is part of the principal's trade, business or occupation does not arise. Malone & Johnson, op. cit., p. 249; Young v. Petty Stave & Lumber Co., supra.
Jones argues, however, that a worker's gratuitous services benefiting the employer, even in the absence of a specific contract, may create an employment relationship and subject the employer to comp liability. La. R.S. 23:1044; Gotto v. ARA Living Center, 570 So.2d 1172 (La.App. 5th Cir.1990), and citations therein. However, the summary judgment evidence shows that the experimental painting and sandblasting done by ASI was solely for its own benefit, to improve its chances of eventually securing future contracts. United subsequently paid ASI for sandblasting only because ASI ultimately obtained the contract; United would have paid in full any party who won the contract, regardless of whether ASI painted patches of the bridge in February 1992. Similarly, NOIA reimbursed United for this expense in the form of rent credits, but these would have been the same regardless of who ultimately contracted with United.
In sum, the hearing officer did not err in failing to apply the "totality of circumstances" test of Kirkland v. Riverwood, supra. The summary judgment evidence disposes of every genuine issue of material fact.

Conclusion
For the reasons expressed, the summary judgment order is affirmed at Justin Jones Sr.'s cost.
AFFIRMED.
NOTES
[1] In the pleadings and briefs NOIA is also referred to by the name of its governing authority, the New Orleans Aviation Board.
[2] In early February 1992, ASI had performed minor emergency repair to Gate 12C at United's request, as shown by an invoice for $36.00. R. p. 356. This was unrelated to the experimental painting and sandblasting, however.
[3] Jones also joined Northwest Airlines, which filed a motion for summary judgment at the same time as NOIA. When discovery revealed that Northwest had no involvement with Gate 12C in February 1992, Jones elected not to oppose the motion, which the hearing officer granted from the bench on March 14, 1995. The order dismissing Northwest has not been appealed.
[4] LIGA's answer denies both coverage and liability. R. pp. 847-848.
[5] Each of these cases was a tort suit in which a defendant asserted principal status in order to obtain the tort immunity of La.R.S. 23:1032. In such cases, the scope of statutory immunity is narrowly interpreted. Stelly v. Overhead Door Co. of Baton Rouge, 94-0569 (La. 12/8/94), 646 So.2d 905.