887 So.2d 704 (2004)
ARGONAUT GREAT CENTRAL INSURANCE COMPANY, Plaintiff-Appellant
v.
W. David HAMMETT and Davenport, Files & Kelly, L.L.P., Defendants-Appellees.
No. 39,024-CA.
Court of Appeal of Louisiana, Second Circuit.
November 17, 2004.
*705 The Bezou Law Firm, by Jacques F. Bezou, Michelle R. Demarest, for Appellant.
Allen & Gooch, by James H. Gibson, for Appellees.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
This legal malpractice action arises out of prior litigation, and prior decision of this court, in Huffman v. Goodman, 34,361 (La.App.2d Cir.4/4/01), 784 So.2d 718, writ denied, 01-1331 (La.6/22/01), 794 So.2d 791. In Huffman, this court held that Argonaut Great Insurance Company's ("Argonaut") third party claim was extinguished under the three-year peremptive period of La. R.S. 9:5606. Argonaut subsequently filed a legal malpractice action against Defendants, W. David Hammett and Davenport, Files and Kelly, L.L.P. ("Hammett/Davenport") for failure to timely file its third party claim(s) for negligence and indemnity. The trial court granted summary judgment in favor of Hammett/Davenport. Argonaut appeals. For the reasons stated herein, we reverse and remand.

FACTS
The facts of the underlying case of Huffman, reproduced from our opinion in that case, are as follows:
On May 25, 1995, Plaintiff, Jack Huffman, and Defendant, Ronnie Dale Goodman, were involved in a motorcycle/automobile accident resulting in injuries to Mr. Huffman. Mr. Goodman was a delivery driver for Podnuh's and was making deliveries when the accident occurred. Mr. Huffman and his wife ("Plaintiffs") sued Mr. Goodman and his insurer and added as defendants Podnuh's and its insurer, Trinity, via a First Supplemental and Amended Petition. Trinity provided an insurance policy covering Podnuh's hired and non-owned automobiles, which included the vehicle Mr. Goodman was driving at the time of the accident. In May 1995, prior to the accident, additional insurance was obtained by Podnuh's from Argonaut through Powell. The facts relevant to this appeal are those surrounding the coverage provided by Argonaut to Podnuh's and Powell's actions in procuring the coverage. On April 30, 1995, Powell, through its representative, John O'Brien, prepared a "Property and Casualty Insurance Proposal" for Podnuh's which included a quoted premium for $1,000,000 of coverage for hired and non-owned automobiles. Podnuh's accepted the proposal and made partial payment of the premium quoted. Mr. O'Brien contacted Argonaut regarding Podnuh's desire to have coverage for hired and non-owned automobiles. Argonaut specifically denied Powell's request to provide such coverage to Podnuh's in a written refusal sent to Powell on May 12, 1995. On May 23, 1995, however, Powell issued a binder with an effective date of May 5, 1995, erroneously indicating that Argonaut was providing $1,000,000 in coverage to Podnuh's for hired and non-owned automobiles. On November 21, 1995, the actual policy was sent to Podnuh's with a letter from Mr. O'Brien indicating that the policy had been reviewed for errors and did provide the coverage requested by Podnuh's. Powell admits that the "x" marks *706 on the binder next to hired and non-owned auto indicate that such coverage exists; however, Powell contends that the "x" marks were mistakenly placed in the boxes by a clerical assistant. In the interim, on July 24, 1995, Plaintiffs had filed suit against Mr. Goodman and his personal insurer for damages resulting from the accident.
In August 1995, Powell issued two certificates of insurance to third parties which erroneously indicated that Podnuh's had hired and non-owned automobile coverage from Argonaut. Powell's explanation for the issuance of the certificates is that, once the information was mistakenly entered into the agency's computer (when the "x" marks were mistakenly placed on the binder) until the mistake was corrected, the computer would automatically generate erroneous certificates of insurance.
On October 30, 1995, by First Supplemental and Amending Petition, Plaintiffs added Podnuh's and Trinity as defendants. Podnuh's and Trinity filed an answer on December 28, 1995. In September 1996, Podnuh's notified Powell of the claim arising out of the accident. Mr. O'Brien responded by letter dated September 23, 1996, which specifically references "Hired & Non-Owned Automobile" coverage. The letter reads as follows:
Dear Mr. Hooper (sic):
Enclosed is a copy of the May 12, 1995 memo regarding your hired & non-owned automobile (sic). The memo addresses several issues and specifically replies to our request to include hired and non-owned automobile (sic). Obviously, this memo is very important because it is the reason Powell Insurance did not include hired & non-owned automobile coverage. As illustrated the underwriter indicated she contacted the Louisiana Automobile Liability Rating Bureau and was told an insured could not have two hired & non-owned policies. As your hired & non-owned claim evolves we will find out what relevance this memo will have. Please keep this memo for your file.... (Emphasis ours).
Powell, however, again issued certificates of coverage to third parties in October 1996 and March 1997 which erroneously indicated that Podnuh's did have hired and non-owned automobile coverage through Argonaut.
On October 31, 1997, by Fourth Supplemental and Amending Petition, Plaintiffs added Argonaut as a defendant. On January 15, 1998, Argonaut answered, denying coverage. On July 22, 1998, Plaintiffs filed a Supplemental and Amended Petition naming Powell as a defendant. On September 28, 1998, Powell responded to Plaintiffs' Fifth Supplemental and Amending Petition, filing a "Peremptory Exception of No Right or Cause of Action." On October 17, 1998, Argonaut filed a cross claim against Powell alleging errors and omissions in association with the policy issued by it to Podnuh's and seeking indemnity in the event Argonaut was required to provide coverage for the loss. Argonaut also filed a third party demand against Powell's insurer, Utica Mutual Insurance Company ("Utica"). On June 14, 1999, Podnuh's and Trinity filed an answer and cross claim/third party demand in negligence against Powell and Utica claiming that, in the event there was a determination that the policy issued by Argonaut to Podnuh's did not provide hired and non-owned automobile coverage, then Powell was legally responsible for failing to properly procure coverage. On June 24, 1999, the trial court granted Powell's *707 Exception of No Right or Cause of Action and dismissed Plaintiffs' Fifth Supplemental and Amended Petition, finding that Plaintiffs had no cause of action against Powell. The ruling was affirmed by this court on August 23, 2000. See Huffman v. Goodman, 33,647 (La.App.2d Cir.8/23/00), 766 So.2d 651.
On June 21, 1999, Powell filed Exceptions of Peremption seeking the dismissal of Podnuh's, Trinity's and Argonaut's cross claims/third party demands. On October 29, 1999, Podnuh's filed a Supplemental and Amending Cross Claim and Third Party Demand against Powell alleging fraud. On November 15, 1999, Powell filed an Exception of Prescription seeking dismissal of Podnuh's Supplemental and Amending Cross Claim and Third Party Demand (fraud). On March 14, 2000, Powell filed a Motion to Withdraw Exception of Peremption and Substitute Exception of Prescription seeking dismissal of Podnuh's original cross claim/third party demand (negligence). On March 24, 2000, Powell filed an Exception of Prescription seeking dismissal of Argonaut's cross claim/third party demand. The various exceptions of peremption and prescription filed by Powell were submitted on memoranda and the trial court sustained each exception as to both Argonaut and Podnuh's without written reasons.
(Emphasis in opinion.) This court affirmed the dismissal of Argonaut's third party claim(s) for negligence and indemnity against Powell because they had been extinguished by peremption and the supreme court subsequently denied writs. This suit for failure to timely file the claims followed. Motions for summary judgment were filed by both parties. The motions were submitted on briefs and the trial court ultimately sustained Hammett/Davenport's motion, adopting Hammett/Davenport's memorandum in lieu of providing written reasons.

DISCUSSION
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Jones v. Airport Systems Int'l, 28,278 (La.App.2d Cir.4/3/96), 671 So.2d 1176. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. The burden of proof remains with the movant. If, however, the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. La. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. The party opposing summary judgment *708 cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Row v. Pierremont Plaza, L.L.C., 35,796 (La.App.2d Cir.4/3/02), 814 So.2d 124, writ denied, 02-1262 (La.8/30/02), 823 So.2d. 952, citing, Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226; Knowles v. McCright's Pharmacy, Inc., 34,559 (La.App.2d Cir.4/4/01), 785 So.2d 101. The trial court cannot make credibility determinations on a motion for summary judgment. Row, supra. It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. Row, supra, citing Smith v. Lynn, 32,093 (La.App.2d Cir.8/18/99), 749 So.2d 692.

One-Year Peremption
In Huffman, as previously stated, we found Argonaut's third-party claim against Powell to be perempted under the three-year peremptive period of La. R.S. 9:5606. Accordingly, in that opinion, we did not address application of the one-year peremptive period.
La. R.S. 9:5606[1] establishes a one-year peremptive period in which a party can file suit against an insurance agent. This period begins running from the date the plaintiff discovered or should have discovered the alleged act, omission or neglect. Once it commences, the peremptive period is not subject to contra non valentem; the discovery rule merely provides the starting point of the peremptive period and is not a suspension or interruption as with contra non. See Huffman, supra. The action is extinguished if the plaintiff fails to file within the one-year period.
In the current action, application of the one-year period is a critical inquiry as *709 Hammett/Davenport argues, inter alia, that Argonaut's third-party claim was perempted under the one-year period before it was hired as Argonaut's counsel in the matter in November 1997. For this reason, Hammett/Davenport asserts that the trial court was correct to grant summary judgment in its favor in this malpractice action. On the other hand, Argonaut maintains that there are genuine issues of material fact regarding when it had actual or constructive knowledge of the error made by Powell in binding H & NO coverage to Podnuh's. After reviewing the deposition testimony and documents submitted on the motion, we agree that factual disputes exist in this regard sufficient to make summary judgment inappropriate on this issue.
As previously stated, the one-year peremptive period commences on the date the plaintiff discovered or should have discovered the alleged act, omission or neglect, which, in this case, is Powell's erroneous issuance of the binder reflecting hired and non-owned coverage in favor of Podnuh's in May 1995. The specific issue, therefore, is when Argonaut discovered or should have discovered Powell's erroneous issuance of the binder.
Hammett/Davenport argues that the deposition testimony of Roger Hughes clearly establishes that Argonaut knew of the issuance of the first erroneous binder in May 1995. There is some evidence to suggest that Argonaut may have been made aware of the issuance of the first erroneous binder and that it called the error to Powell's attention and requested that a correct binder be issued. It is undisputed that a second binder was issued that contained the same error, again binding H & NO coverage. Mr. Hughes' testimony, however, does not indicate when, if at all, Argonaut was made aware that the second binder was issued and contained the same error. Geraldine Walters, an underwriter for Argonaut, testified that she was in charge of this underwriting file and that she was not aware that the coverage had been erroneously bound until after October 1997, after Argonaut was made aware of the Huffman claim and was brought in as a defendant in the underlying litigation. The handwritten notes and documentary evidence provided by Hammett/Davenport do not establish, as a matter of law, Argonaut's actual knowledge of the issuance of the erroneous binders on any given date. In addition, Mr. O'Brien testified that he had no knowledge that the binders were ever sent to Argonaut.
Regarding constructive knowledge, we note that Ms. Walters did testify that certain certificates of insurance indicating the existence of H & NO coverage were found in Argonaut's underwriting file; however, there is no evidence of when such certificates were received by Argonaut or who received them and placed them in the files. We cannot conclude, as a matter of law, that this constitutes constructive knowledge on the part of Argonaut. Simply put, factual disputes exist as to when Argonaut learned of the binders and when, if at all, Argonaut could be charged with constructive knowledge of Powell's error. The determination of these factual issues will necessarily include credibility calls and the weighing of conflicting evidence.
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Although we cannot determine from the record if this was the basis upon which the trial court granted Hammett/Davenport's motion for summary judgment[2], we find that granting summary *710 judgment on this issue would be inappropriate.

Validity of E & O claim
Hammett/Davenport argues that Argonaut does not have a valid E & O claim against Powell because it failed to deliver the general liability policy, which would show an absence of H & NO coverage, to Podnuh's within a reasonable time as required by La. R.S. 22:634.[3] The policy was delivered to Podnuh's in November 1995, approximately six months after the issuance of the erroneous binders in this case. While this may very well be an unreasonably long time to delay delivery of a policy, this is not the critical time period in the case sub judice. The pertinent inquiry is what period of time after the issuance of the erroneous binders is reasonable for the policy to be delivered. This is a question of fact and the facts of this particular case are unique in that the accident happened hours after H & NO coverage was erroneously bound by Powell. Even if Argonaut had mailed the general liability policy to Podnuh's the day after the binders were issued, delivery would likely not have been made prior to the accident giving rise to Huffman's claim. For this reason, the alleged untimely delivery of the general liability policy to Podnuh's is not an appropriate basis upon which to grant summary judgment in favor of Hammett/Davenport.

Estoppel
Hammett/Davenport advance several estoppel-based arguments that they suggest support the trial court's granting of summary judgment in this case. Argonaut, however, points out issues of fact that it urges must be determined before a ruling can be made with respect to the estoppel-based arguments. Finding that issues of fact do exist in this regard, we conclude that summary judgment would not be properly granted on the basis of any of the estoppel-based arguments of Hammett/Davenport.
First, issues of fact exist as to whether or not Argonaut failed to have in place adequate and appropriate procedures so as to estop it from asserting an otherwise valid E & O claim against Powell. We further note that any such failure on the part of Argonaut which may have kept Argonaut from discovering Powell's error may not necessarily preclude it from seeking indemnification for an error on the part of its agent. This is not an appropriate basis upon which to grant summary judgment.
Second, there exists a genuine issue of material fact as to whether Podnuh's was charged and Argonaut received a premium for the erroneously bound H & NO coverage. Hammett/Davenport assert that "there is no question that premiums were charged for H & NO coverage by the *711 O'Brien Agency." They argue that the sum of $175 was quoted for the H & NO coverage, but was never refunded to Podnuh's, indicating that Argonaut received and retained a premium for the coverage. According to Hammett/Davenport, Argonaut should, therefore, be estopped from seeking indemnification for erroneously binding the coverage. This is disputed, however, by Argonaut, who produced the testimony of Mr. O'Brien that Podnuh's was not charged a premium for the coverage and that the $175 was not included in the final premium amount calculated; therefore, no refund was due Podnuh's. This factual dispute alone precludes summary judgment on this issue.
Third, we find that issues of fact exist as to whether or not Argonaut had a viable claim for fraud against Powell making summary judgment based on the dismissal of the civil fraud claim improper. Hammett/Davenport filed the civil fraud claim in an effort to keep Argonaut's claim alive because fraud is exempted from the three-year peremptive period of 9:5606. See La. R.S. 9:5606(C). We are mindful that, in our prior opinion in this case, we did not find evidence of fraud on the part of Powell on the record before us in that appeal. Hammett/Davenport, however, has now submitted a litany of factors which it suggests support the existence of a viable claim of fraud and further assert that Argonaut's instruction to dismiss the civil fraud claim should preclude a lawsuit for failure to timely file its action against Powell. Argonaut argues, however, and we agree, that issues of fact exist within this litany of factors cited by Hammett/Davenport. As previously noted, there exists an issue of fact regarding the payment and acceptance/retention of a premium for this coverage. In addition, there is conflicting evidence on whether Argonaut was made aware of the first binder issued and whether it contacted Powell about the binder. The latter is but one aspect of the factual dispute of when Argonaut discovered or should have discovered the error which provides the basis for its claim against Powell.
Finally, we find that genuine issues of fact exist as to whether Mr. Hammett violated the standard of care in the advice he gave to Argonaut regarding the time limitations on actions against its agent, Powell. Simply put, this case involves factual disputes which are better addressed by the fact finder than by the trial judge on summary judgment or this court on appeal. We conclude, therefore, that, on any basis cited by Hammett/Davenport, the motion for summary judgment was improperly granted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Defendants W. David Hammett and Davenport, Files & Kelly, L.L.P. is reversed and the matter is remanded for further proceedings. Costs are assessed to W. David Hammett and Davenport, Files & Kelly, L.L.P.
REVERSED AND REMANDED.
NOTES
[1] La. R.S. 9:5606 reads as follows:

A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
[2] As previously mentioned, instead of providing oral or written reasons for ruling, the trial court adopted the memorandum of Hammett/Davenport as its reasons for judgment.
[3] La. R.S. 22:634, Delivery of policy, states:

A. Subject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance.
B. In event the original policy is delivered or is so required to be delivered to or for deposit with any vendor, mortgagee, or pledgee of any motor vehicle or aircraft, and in which policy any interest of the vendee, mortgagor, or pledgor in or with reference to such vehicle or aircraft is insured, a duplicate of such policy, or memorandum thereof setting forth the type of coverage, limits of liability, premiums for the respective coverages, and duration of the policy, shall be delivered by the vendor, mortgagee, or pledgee to each such vendee, mortgagor, or pledgor named in the policy or coming within the group of persons designated in the policy to be so included.