920 So.2d 969 (2006)
Sheila THOMAS and Kenneth Thomas, Individually and on Behalf of Their Minor Son, Henry Hunter Thomas, Plaintiff-Appellants,
v.
Ryan Gregory DUNCAN and Kent Duncan and State Farm Mutual Automobile Insurance Company and Shreveport Dixie Baseball, Inc., Defendant-Appellees.
No. 40,635-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
*970 Chester Hugh Boyd, Baton Rouge, for Appellants.
Perkins and Associates, L.L.C., by Mark A. Perkins, Shreveport, Trent Roddy, for Appellee Shreveport Dixie Baseball, Inc.
Sharp Henry Cerniglia, Colvin Weaver & Hymel by James H. Colvin, Shreveport, for Appellee State Farm Mutual Automobile Ins. Co.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
The plaintiffs, Sheila and Kenneth Thomas, appeal a summary judgment in favor of one defendant, Shreveport Dixie Baseball Inc. ("Dixie"), in a suit arising from an auto-pedestrian collision which injured the Thomases' minor son, Henry. We affirm.

Factual Background
Henry was eight years old on April 28, 2003, when his mother took him to a Dixie Baseball League game at Dixie's new ball-park *971 in southwest Shreveport. Dixie's ballpark is situated to the east of Interport Drive, a four-lane north-south highway divided by a grassy median.
According to Mrs. Thomas's deposition, on the date of the accident the only way to enter the ballpark was the middle gate off Interport; cars were parked on the median and both sides of the road. Mrs. Thomas stopped in front of the middle gate, but in the southbound lane; thus, Henry had to cross the median and the northbound lane to reach the gate. Henry "wanted to go ahead and go," so Mrs. Thomas let him out even though the gate was hard to see because of the parked cars. She testified that the gate to the ballpark's parking lot was closed, but admitted there was nothing to prevent her from stopping at the open gate on the other side of the road. There was no crossing guard or crosswalk at the location.
When Henry tried to cross the northbound lanes of Interport, he was struck by a 1984 Olds Cutlass driven by Ryan Duncan. Henry sustained a broken leg and other injuries. According to the accident report, Duncan told Officer Ardoin that the boy ran between cars parked on the median and stepped into the street without yielding to traffic.
In April 2004, the Thomases filed this suit against Duncan, his father and their insurer, and against Dixie. The Thomases alleged that Dixie contributed to the accident by failing to provide a proper entry point to the park, a crosswalk to the entry gate, a crossing guard or a light to prevent accidents where persons enter the park. They also alleged that Dixie failed to use the main gate and parking facilities provided for the park, and opened the park before it was complete with respect to inspections and permits.
Dixie moved for summary judgment, urging that it had neither the responsibility, duty nor authority to improve public roads by providing crosswalks, crossing guards or traffic lights. In support, it attached portions of Mrs. Thomas's deposition, as well as the accident report and the affidavit of Dixie's president, Randy Cantrell. Cantrell averred that Dixie was in compliance with all zoning and building requirements to open and begin operations of the ballpark, and had previously received authorization from the proper governmental authorities to construct the facility.
The Thomases opposed the motion, arguing that on the date of the accident the parking facilities were not completed and Dixie left parking to the patrons. They contended that because Dixie "caters to" young children, it has an obligation to protect them but failed to provide adequate parking or any security to prevent this type of accident. Finally, they urged that Cantrell's affidavit was either in error or had been contradicted by his deposition. Their pleading referred to an excerpt from Cantrell's deposition, but no such excerpt was attached or offered at the hearing.
The Thomases did attach four affidavits of patrons of the ballpark. Kenneth Thomas, Henry's father, stated that at the time of the accident, the parking lots at the ballpark were not completed or open to the public; parking was allowed on Interport, where most persons using the facility parked; the only gate available on Interport was one through which a car could not go; and since this accident, the speed limit had been reduced from 35 mph to 25 mph. Vernon Cooksey, Henry's coach, also stated that at the time of the accident, the parking lots were not completed and patrons could not park inside the facility. Cooksey further averred that patrons had to park on Interport, doing so with the knowledge of park officials and without objection by the police; he described various *972 remedial measures taken since April 2003. Affidavits of Mrs. Thomas and of Russell Rothell largely echoed the points raised in those of Mr. Thomas and Mr. Cooksey.
After a hearing on May 2, 2005, the district court granted Dixie's motion for summary judgment and rendered judgment dismissing the Thomases' claims against Dixie. This appeal followed.

Discussion
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Argonaut Great Cent. Ins. Co. v. Hammett, 39,024 (La.App. 2 Cir. 11/17/04), 887 So.2d 704, writ denied, XXXX-XXXX (La.2/25/05), 894 So.2d 1151. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be constructed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Appellate review of the grant or denial of a summary judgment is de novo. Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002; Row v. Pierremont Plaza LLC, 35,796 (La.App. 2 Cir. 4/3/02), 814 So.2d 124, writ denied, XXXX-XXXX (La.8/30/02), 823 So.2d 952.
Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. This analysis usually requires proof of five separate elements: (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (2) proof that the defendant's conduct failed to conform to the appropriate standard; (3) proof that the defendant had a duty to conform his conduct to a specific standard; (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) proof of actual damages. Bonin v. Ferrellgas Inc., XXXX-XXXX (La.7/2/04), 877 So.2d 89; Patton v. Strogen, 39,829 (La. App. 2 Cir. 8/17/05), 908 So.2d 1282. The existence of a duty to provide security is suitable for summary judgment disposition. Smith v. AAA Travel Agency, 37,728 (La.App. 2 Cir. 10/29/03), 859 So.2d 286, writs denied, XXXX-XXXX, 3329 (La.2/6/04), 865 So.2d 731, 735.
On appeal, the Thomases list eight questions which, in their view, raise material issues of fact precluding the grant of summary judgment:
1. Was the parking lot open to anyone?
2. Was the parking lot finished?
3. Had the park received all its final permits and been accepted for both playing in the ballfield and parking?
4. Was the ballpark an attractive nuisance?
5. What duty does Dixie have toward its players and patrons?
6. Is the affidavit of Mr. Cantrell in error or false?
7. Do the four affidavits filed in opposition to the motion for summary judgment create genuine issues of material fact?
8. If parking is not available and patrons are forced to park where they can, does Dixie have a duty to provide security to the children?
This court analyzed the applicable principles in Johnson v. Ouachita Parish Police Jury, 377 So.2d 397 (La.App. 2 Cir.), *973 writ denied, 378 So.2d 1375 (1979). In that case, a motorist struck and killed a seven-year-old student who was attempting to cross a heavily-traveled road on his way to school. We noted that the only safety measure which might have prevented the accident would have been to post school crossing guards; the plaintiff contended the school board was negligent for failing to provide this protection for her son. Finding no such duty, we stated:
We have been cited no authority by plaintiff which imposes a duty on the school board to employ adult crossing guards on public streets. Plaintiff has referred to provisions of the Traffic Control Service Manual, developed by the Louisiana Department of Highways pursuant to the mandate of Act 310 of 1962 which is made effective on local government by La. R.S. 33:1236(28). From our examination of the provisions of this manual it is contemplated that only Police authorities have the power and responsibility to employ adult school crossing guards.
The plaintiff in Johnson also urged the school board owed the duty to furnish crossing guards under its general duty to protect children under its supervision. We were unable to find, however, any Louisiana case imposing an absolute duty on a school board to furnish crossing guards, and we distinguished cases in which such guards were regularly provided by the city police department but absent on the date of the accident. The Johnson case indicates that one who is not exercising control over public streets has no general duty to help persons cross the street safely, even if one knows these persons are crossing to gain access to one's premises.
The Thomases have shown no statutory authority, and we are aware of no such authority, that would require or even allow a private entity like Dixie to install traffic control devices or signs on a public thoroughfare like Interport Dr. In fact, such conduct is prohibited. La. R.S. 32:236.
Furthermore, we are aware of no authority imposing a general duty on a private entity to employ crossing guards on a public highway. Admittedly, when an entity voluntarily assumes a duty to protect the public, then it must discharge that duty with due care. Harris v. Pizza Hut of La. Inc., 455 So.2d 1364 (La.1984). In Donavan v. Jones, 26,883 (La.App. 2 Cir. 6/21/95), 658 So.2d 755, writs denied, 95-1786, 1891 (La.11/3/95), 661 So.2d 1379, this court affirmed a jury verdict against an employer who required contract employees to park across a highway and cross it on foot to gain access to its plant at night. We concluded that this parking arrangement breached the employer's general duty to provide a safe working environment for its statutory employees. No such showing has been made in the instant case.
We do not find that Dixie's duty to provide reasonably safe access to its ballpark included providing specially protected access, either by traffic control signals or crossing guards. We also do not find that Dixie assumed any such special duty. The undisputed facts show that Dixie provided an entry to its ballpark through its middle gate on Interport Drive. This ingress was reasonably safe for patrons who were dropped off directly in front of it, from the northbound lane of Interport. Unlike other parents that day, Mrs. Thomas elected to let out her son in the southbound lane, requiring him to cross a crowded median and two lanes of traffic on foot. Dixie's general duty to provide reasonably safe access does not extend to this contingency.
In light of this finding, the alleged discrepancies between Mr. Cantrell's affidavit and deposition, concerning whether the ballpark itself or the parking areas were *974 complete, or had been accepted and certified by Shreveport city officials, do not rise to the level of genuine issues of material fact. The summary judgment is correct.

Conclusion
For the reasons expressed, the summary judgment is affirmed at appellants' costs.
AFFIRMED.