930 So.2d 1160 (2006)
Keith HARPER, Plaintiff-Appellant
v.
Jerry GOODWIN, et al, Defendant-Appellees.
No. 41,053-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
Keith Harper, Pro Se.
Louisiana Department of Justice, by E. David Gilmer, for Appellees.
*1161 Before STEWART, CARAWAY and MOORE, JJ.
MOORE, J.
Keith Harper, an inmate at David Wade Correctional Center ("DWCC"), appeals a summary judgment dismissing his claims for injunctive relief and damages against prison officials. He alleged that after sustaining an anaphylactic reaction to a yellow jacket sting, he was the victim of "medical negligence, deliberate indifference, denial of medical care, and improper work classification." We affirm.

Factual Background
Harper entered DWCC in June 2001. His initial intake screening showed he was healthy with no known allergies; he was issued a regular work duty status.
On October 23, he was working in a field outside the compound when a yellow jacket stung him on the right arm. He alleged that he fell to the ground unconscious and was taken to the DWCC infirmary. He was found to be sweaty and clammy with a BP of 60/38, elevated pulse and temperature of 97.6°; he was given 50 mg of Benadryl and a saline IV, and taken to LSU Medical Center (E.A.Conway) in Monroe. Later that day he was returned to DWCC, alert and oriented; the next day he had a rash on his arms, chest and back, for which he was given regular doses of Benadryl. His condition gradually improved.
Dr. Pam Hearn, the medical director at DWCC, concluded that Harper's medical condition would not prevent him from working in the field; she also felt that he was just as likely to receive a bee sting on the compound as in the field. She wrote a duty status report allowing him to return to regular work but to carry a 50 mg Benadryl on his person "in case of a sting because Benadryl is an antihistamine and a first-line treatment for hypersensitivity disorder."
On October 30, Harper filed an administrative remedy procedure request ("ARP"), alleging that reassigning him to work in the field posed an unnecessary risk to his health and displayed deliberate indifference to his physical safety. While this was pending, he was apparently assigned to dormitory housing.
On July 5, 2002, a correctional officer filed a grievance against other prison officials but included unspecified assertions about Harper. On July 11, Harper was reassigned to Crew 1 (field work). According to Jerry Goodwin, deputy warden at DWCC, this was because of "inappropriate behavior whereby inmate Harper was found creating a hostile work environment among DWCC employees." On July 15, Harper filed another ARP, again alleging that because of his allergic condition, he could not risk being exposed to stings.
On July 23, Harper was working in the field when he was again stung by a yellow jacket, this time on his left arm. He used the Benadryl as directed and was taken to the infirmary. Nurse Austin found his BP was 130/78 and his other vital signs normal. She directed him to continue taking Benadryl and using calamine lotion. According to Harper's petition, Nurse Austin refused to issue him no-duty status, but matters of record show that he received three "regular with restrictions" reports through August 8. According to Sarah Bilberry, the classification supervisor at DWCC, Harper was reassigned to Vo-Tech carpentry on August 11.

Procedural History
In late August 2002, Harper filed the instant petition for damages and injunctive relief. He named as defendants Jerry Goodwin, Dr. Hearn, Nurse Austin, Ms. Bilberry, and other prison officials. In a predocketing review as required by La. R.S. 15:1184 A(2), the district court found the petition stated a claim but did not *1162 warrant immediate injunctive relief. The petition was officially filed on October 1.
After filing an answer that asserted general denials, the defendants moved for summary judgment in August 2005. They alleged that Harper could not show they breached any duty to him during his confinement at DWCC. In support, they offered five affidavits with attachments.
Dr. Pam Hearn, the medical director, and Nurse Austin, who had been employed at DWCC for some 4½ years, recounted Harper's medical treatment after both bee stings, part of which is summarized above. Dr. Hearn testified that she did not assign him to work in the field, but that his condition would not prevent him from doing so. She added that neither she nor any other DWCC medical personnel ever ignored his complaints. Nurse Austin similarly testified that she did not participate in determining Harper's duty status or selecting his job assignments, and she denied being negligent or indifferent to his medical needs.
Jerry Goodwin, the deputy warden, testified that reassignment boards met daily to make necessary job, housing or custody changes as outlined in the DWCC classification program, a copy of which was attached to his affidavit. He stated that in accord with the program, a board reassigned Harper to a field crew in July 2002 because of "inappropriate behavior * * * creating a hostile work environment among DWCC employees," and transferred him to Vo-Tech carpentry from August through October 2002. Goodwin added that he was not a physician and did not participate in diagnosing Harper's condition; however, he maintained he did not retaliate, and was neither negligent nor indifferent toward Harper's medical needs.
Ms. Bilberry, the supervisor in charge of classification, reiterated much of Goodwin's testimony, adding that Harper's job assignments between October 23, 2001 and October 2, 2002 were based on his medical assignment of regular duty with no restrictions, and resulted from decisions by the Reassignment Board.
Angie Huff, another deputy warden, testified she was familiar with the ARP grievance procedure and had reviewed Harper's claims. She had evaluated his July 2002 ARP and the first-step response submitted by DWCC personnel; this ARP was denied because of medical findings from an examination of his medical records. Although she was not a physician, she maintained she was never negligent or intentionally indifferent to Harper's medical needs.
Harper filed a verified memorandum in opposition to the motion for summary judgment. He attached no affidavits or other documents, but argued that despite having specific prior knowledge of his severe allergy to bee stings, the defendants arbitrarily reassigned him to a work detail that placed him at greater risk of being stung. He also "strongly disputed" that his July 2002 reassignment to the work crew was a result of inappropriate behavior; he asserted there was no incident report (or "unusual occurrence report" or "rule violation report") to show that he had done anything wrong, and in fact he had merely witnessed an altercation between two DWCC employees, one of whom he named.
At the hearing in September 2005, the defendants argued that Harper had received prompt and appropriate medical treatment after each bee sting; that medical personnel had placed him on regular duty status, and his job assignments were not governed by the defendants, but by DWCC's classification board. They also reiterated that inmates cannot be shielded from insects, either in the field or on the compound, but that the defendants had taken reasonable measures to minimize any adverse reaction should he get stung.
*1163 Harper conceded that his suit was not based on the first yellow jacket sting, but rather on the "arbitrary reassignment by the defendants that specifically placed me at a greater risk of harm" starting in October 2002. He denied that he had been reassigned to the field for inappropriate behavior, citing the defendants' failure to produce any incident reports. He insisted he was willing to work, only not in the fields where he might be fatally stung.
The district court denied the request for injunctive relief and granted summary judgment in favor of all defendants. Harper has appealed, raising three assignments of error.

Discussion
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Argonaut Great Cent. Ins. Co. v. Hammett, 39,024 (La.App. 2 Cir. 11/17/04), 887 So.2d 704, writ denied, XXXX-XXXX (La.2/25/05), 894 So.2d 1151. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
Appellate review of the grant or denial of a summary judgment is de novo. Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002; Row v. Pierremont Plaza LLC, 35,796 (La.App. 2 Cir. 4/3/02), 814 So.2d 124, writ denied, XXXX-XXXX (La.8/30/02), 823 So.2d 952.
Prison authorities owe a duty of reasonable care to protect inmates from harm. Hardy v. Foti, XXXX-XXXX (La.App. 4 Cir. 2/27/02), 812 So.2d 792; Williams v. Kelone, 560 So.2d 915 (La.App. 1 Cir.), writ denied, 567 So.2d 107 (1990). They also owe a duty to provide inmates with reasonable medical care. Robinson v. Stalder, XXXX-XXXX (La.App. 1 Cir. 4/1/99), 734 So.2d 810; Roy v. Phelps, 488 So.2d 468 (La.App. 3 Cir. 1986). Inmates are not entitled to ideal work and living conditions, but only those reasonably within their medical limitations. McDowell v. Taylor, XXXX-XXXX (La.App. 1 Cir. 6/23/00), 762 So.2d 1149; Williams v. Kelone, supra.
Harper's third assignment of error contends that genuine issues of material fact existed regarding prison officials' duty to use reasonable care to protect him from harm. The existence of a duty is question of law, not fact. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Klein v. Cisco-Eagle Inc., 37,398 (La.App. 2 Cir. 9/24/03), 855 So.2d 844. The defendants' duty is established under Hardy v. Foti, supra, and the only possible factual issue was whether Harper produced any evidence to show that they breached it.
Harper's second assignment of error contends the district court erred in failing to find a genuine issue of material fact as to whether he received appropriate medical care and treatment, or was intentionally denied such treatment. This record clearly shows that Harper received prompt medical treatment after each sting. It also shows that Dr. Hearn ordered Harper to carry bee sting medication on his person at all times; by using this after the second sting, he avoided the serious reaction he suffered with the first sting. On this record there is no genuine issue that Harper received prompt and appropriate medical treatment.
*1164 Harper's first assignment of error contends the district court erred in failing to find a genuine issue of material fact as to whether he was arbitrarily reassigned without due regard for his health status. As noted, both Jerry Goodwin, a deputy warden, and Ms. Bilberry, a classification supervisor, testified that Harper's work assignments were made by a reassignment board in accord with the medical reports. There is no showing that any of the defendants herein were members of this board, or that the work assignments exceeded Harper's medical capacity as documented by Dr. Hearn or the nurses. The record discloses no breach of duty.
In his memorandum and at the hearing, Harper argued that the claim of inappropriate behavior was false, as evidenced by the lack of incident reports, with the result that his July 2002 reassignment to the field was arbitrary. While this may suggest that some DWCC officials could have harbored vindictive motives in reassigning him to a less desirable work detail, it does not show that they breached their duty to assign work within his medical capacity. Harper was not entitled to an ideal work assignment, only one within his medical limitations. McDowell v. Taylor, supra; Williams v. Kelone, supra. The possibility that other prison officials may have had ulterior motives to reassign Harper does not create a genuine issue of material fact in this litigation.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are to be paid by the plaintiff, Jerry Harper, to the extent permitted by La. C.C.P. art. 5188.
AFFIRMED.