NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0917

MARCELLUS BREACH

VERSUS

GARY COPES, ET AL.

************

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT,
PARISH OF EVANGELINE, NO. 00067886-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.

AFFIRMED.

Marcellus Breach
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749
PLAINTIFF/APPELLANT: IN PROPER PERSON

Christopher A. Edwards
Edwards Law Firm
Post Office Box 2970
Lafayette, LA 70502-2970
(337) 237-6881
COUNSEL FOR DEFENDANTS/APPELLEES:
    Gary Copes, et al.

PETERS, J.

The plaintiff in this litigation, Marcellus Breach, is a prison inmate appearing herein in proper person. He appeals the trial court grant of summary judgment dismissing his suit for damages and injunctive relief against various prison authorities. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

Immediately prior to March 16, 2006, Marcellus Breach was serving time in the Alabama prison system for criminal offenses committed in that state. Due to overcrowding conditions in the facility where he was being held, he was transferred on that day to a private prison in Evangeline Parish, Louisiana, operated by LCS Correction Services, Inc. (LCS). On April 6, 2006, just three weeks after his transfer to the Louisiana facility, he filed a proper person suit in Louisiana state court[1], seeking relief for actions and inactions of prison personnel. Originally, and by amendments to the original pleadings, Breach named numerous defendants, including LCS; the warden of the Evangeline Parish facility, Gary Copes; and a number of other officials affiliated with the Evangeline Parish facility.

Breach's pleadings and subsequent amendments covered numerous areas of contention including, but not limited to, complaints concerning lack of access to support facilities for his legal claims against both Alabama and Louisiana defendants; the failure to provide basic services and benefits ranging from notary service to medical services; the refusals to allow him to practice his religion and to provide an adequate grievance procedure; prison conditions, mistreatment, and discriminatory practices; and mail tampering by prison officials. Through legal rulings and a consent

---

[1]The plaintiff filed suit in the 13th Judicial District Court in Evangeline Parish, Louisiana.

judgment, the focus of the litigation has been reduced to Breach's claim that he was denied medical care by the Evangeline Parish facility personnel who were made defendants herein, specifically in regard to treatment for a hernia. He sought a monetary award for damages as well as injunctive relief.[2] The defendants answered Breach's assertions with the specific denial that Breach's hernia needed repair. Instead, the defendants argued that the hernia was a benign condition that might be repairable through elective surgery but was neither life threatening nor dangerous.

On October 6, 2006, some six months and three weeks after he was placed in LCS, Mr. Breach was transferred back to Alabama, thus ending his stay in the Louisiana private prison. However, from his Alabama place of confinement he continued to pursue his Louisiana damage suit and his Louisiana demand for injunctive relief.

On February 7, 2007, the defendants moved for summary judgment, seeking the dismissal of all demands. As to the damage claim, the defendants asserted that there was no genuine issue of fact in dispute because Breach had not been denied reasonable medical care. They also asserted that because Breach was no longer present in Louisiana, the demand for injunctive relief was moot. In support of the motion, the defendants submitted the affidavit of Dr. John Tassin, the Evangeline Parish facility physician; a certified copy of all of Breach's medical records while he was in the Louisiana facility; and a certified copy of his prison records reflecting the dates of incarceration in Alabama and Louisiana. In opposition to the motion Breach

---

[2]Breach sought to enjoin the defendants from denying his requested medical care. Specifically, he sought a judgment ordering the defendants to repair the hernia through surgery.

filed the affidavits of Dr. Satyarandhana Rao Yerubandi, M.D. and Joann Breach,[3] a registered nurse, as well as the affidavits of two fellow prisoners in Alabama.

It is not disputed that Breach suffers from a left inguinal hernia. However, the record before us does not provide the date of its origin, although it was clearly present as early as February 2005, well before his sojourn in Louisiana began. The Louisiana medical records and Dr. Tassin's affidavit establish that Dr. Tassin first saw Breach relative to the hernia on March 21, 2006. The medical record of that date contains the notation, "Needs repair?" Breach relies on this notation to argue that this was a medical acknowledgment by the facility doctor that he was in need of surgical repair of the hernia as early as that date, and that, thereafter, the defendants' denial of surgery was a violation of the duty to provide him with appropriate medical care. However, Dr. Tassin asserted in his affidavit that the notation was merely a question he asked himself at the time and was not intended as an affirmative finding of a need for surgery.

Dr. Tassin's affidavit asserts that on July 12, 2006, he determined that the Alabama Department of Corrections did not require that hernia repairs be performed when the hernia was not incarcerated or into the scrotum. When he next saw Breach on July 18, 2006, Dr. Tassin found that the hernia was not incarcerated and was not in the scrotum. Therefore, he concluded that this was only an elective procedure and that repair was not required. He issued no new treatment orders on this date because he found no change in the hernia since the initial examination. Dr. Tassin last saw Breach on October 3, 2006. However, this visit was for an old ankle injury not

---

[3]The record does not indicate that the affiant nurse, Joann Breach, is petitioner's mother but it does reflect that his mother's name is Joann Breach. We have not considered this affidavit in our de novo review of the motion for summary judgment because Mr. Breach's claim is based on the failure of the defendants to accord him reasonable medical care, not nursing care.

related to the hernia. Dr. Tassin summarized that Breach's hernia condition remained the same during his time at the Louisiana correctional facility. That is to say, it was stable, and surgery was not required for his health or safety.

Dr. Yerubandi executed his affidavit on April 27, 2007, over six months after Breach returned to Alabama. In his affidavit, Dr. Yerubandi identified himself as a surgeon specializing in hernia repair in Alabama. He stated that he had reviewed Breach's medical records at LCS and that he was "familiar" with Breach's complaints. Based on those complaints, he opined that "repair is needed" because the hernia "can" get worse and "may lead to a danger to his health and safety and can lead to hospitalization . . . ." However, what is missing from Dr. Yerubandi's affidavit is any evidence of ever having examined Breach—it only states that he was familiar with the prison records and Breach's complaints. Additionally, his affidavit narrated his understanding and opinions entirely in the present tense.

The record contains numerous pages of articulate proper person pleadings by Breach. It also contains well-documented briefs presenting reasoned arguments in support of his claims and in opposition to the motion for summary judgment. Although many of his pleadings and briefs are handwritten, they are legible, all are intelligently prepared and thorough, and we have had no difficulty ascertaining the basis of his claims and the relief he has requested.

The pleadings and resulting filings after Breach returned to Alabama make up the bulk of the voluminous record now before us. Of note is the fact that, after he filed his brief opposing the motion for summary judgment, Breach filed a notice in the record stating that the court had given him "a fair amount of time to file his opposition to summary judgement" and that he was withdrawing all his

4

"objections/exceptions" in the matter. The trial court thereupon considered the summary judgment offerings and decided the matter on June 12, 2007, granting the summary judgment and dismissing both the claim for damages and the claims for injunctive relief. This appeal followed.

**OPINION**

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. *Kay v. Carter*, 150 So.2d 27 (La.1963). Appellate review of the grant or denial of a summary judgment is de novo. *Jones v. Estate of Santiago*, 03-1424 (La. 4/14/04), 870 So.2d 1002. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish those ends. La.Code Civ.P. art. 966(A)(2); *Racine v. Moon's Towing,* 01-2837 (La. 5/14/02), 817 So.2d 21. The burden of proof on the motion for summary judgment remains with the movant. La.Code Civ.P. art. 966(C)(2). "However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.* The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there

5

is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

Breach's suit for money damages was brought under 42 U.S.C. §1983 (2003) and is based on an alleged violation of U.S. Const. amend. VIII in that he asserts that the prison authorities caused him cruel and unusual punishment by their deliberate indifference to his serious medical needs. In support of his claim for money damages, Breach directs us to the holding in *Stewart v. Murphy*, 174 F. 3d. 530 (5th Cir. 1999), *cert. denied*, 528 U.S. 906, 120 S.Ct. 249 (1999), which provides that inadequate medical care by a prison doctor that amounts to deliberate indifference to the prisoner's serious medical needs can result in a constitutional violation for purposes of a §1983 claim. The case explains that under federal jurisprudence, mere negligence in giving or failing to supply medical treatment will not support an action under §1983.

State courts may exercise jurisdiction over §1983 cases pursuant to the principle of concurrent jurisdiction. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502 (1980). Under Louisiana law prison authorities owe a duty to provide inmates with reasonable medical care. *Harper v. Goodwin*, 41,053 (La.App. 2 Cir. 5/17/06), 930 So.2d 1160. However, unlike federal jurisprudence, there is no superimposed element in that duty that the conduct amount to something more than negligence. In considering Breach's complaint, it matters not whether we apply the federal "deliberate indifference" test on which Breach relies or Louisiana law. The result remains the same. The sole issue before us is whether, in the approximately six months that Breach was in the Louisiana prison facility, Breach received appropriate medical treatment. Therefore, an essential element of his case, and one as to which he had the burden of proof, is a showing that

6

surgical repair of the hernia was medically necessary during his Louisiana imprisonment. We find that he has not made a sufficient showing of that essential element of his case.

Dr. Tassin clearly concluded that surgical repair was not necessary while Breach was under his care in Louisiana. On the other hand, Dr. Yerubandi opined that, in April of 2007, the hernia needed surgical intervention. However, Dr. Yerubandi's opinion is cast from the temporal perspective of April 2007 and views the matter in the present and future tense. The material fact issue in this case is not whether Breach required surgery in April of 2007, but whether repair was necessary during the six months he was under the medical care of the prison facility in Louisiana. The undisputed testimony is that during that period the hernia did not need repair, and it did not get worse as a result of failure to repair it. Thus, Breach has failed to establish any issue of material fact that would indicate that he was denied reasonable medical care while in Louisiana. That being the case, he has failed to show that he can prove at a trial on the merits that the prison officials violated their duty to him, or that he was damaged by their failure to repair the hernia. On the issue of damages, the defendants were entitled to summary judgment as a matter of law.

Breach also argues that the trial court erred in dismissing his demand that the defendants be enjoined from denying him surgical treatment of his hernia. That is to say, he sought, through injunction, to compel the Louisiana prison officials to perform their duty to provide him reasonable medical care: specifically, to repair his hernia. Having already recognized that the trial court did not err in concluding that the Louisiana defendants did in fact provide Breach with reasonable medical care, we also recognize that the trial court did not err in denying Breach injunctive relief.

7

Breach was apparently aware that his return to Alabama created problems in continuing his efforts to compel Louisiana officials to repair his hernia. In his opposition to the motion for summary judgment, he attempted to eliminate these problems by presenting the affidavits of two fellow Alabama prisoners who declared that sometimes Alabama prisoners were returned to Louisiana prisons for a second time. These affidavits do not help him. The mere possibility that he will be returned at some future time for housing in a Louisiana correctional facility does not affect the present facts of this case.

Finally, Breach complains that the trial court denied him discovery in the preparation of his defense to the motion for summary judgment. We find no merit to this argument either. The record establishes that most of his discovery requests had nothing to do with medical treatment. Instead, Breach sought production of information relative to the duties of various officials of LCS. With regard to his requests for information concerning the policies, directives, or instructions in relation to medical treatment of prisoners, as well as for his complete medical records, the defendants complied by providing part of the information and objecting to other requests. Thereafter, on April 4, 2007, the trial court specifically ruled that the defendant's production sufficiently complied with the discovery demands.

During the discovery process, Breach filed numerous motions addressing the sufficiency of discovery and/or the process involved.[4] However, as previously stated, on May 22, 2007, Breach filed a notice in the trial record which reads as follows:

> The court has given unto Breach a fair amount of time to file his opposition to summary judgment. Breach withdraws all objections/exceptions in this matter set for hearing on June 14 [sic] at 9:00 A.M.

Our careful review of the numerous pleadings filed by Breach following the rulings of the court on his discovery motions, and the responses and objections thereto, convinces us that he meant what he wrote when he announced the withdrawal of all objections in the matter. The tenor of his 133-page opposition to summary judgment, his confidence in the affidavit of Dr. Yerubandi, his eagerness for the motion to be decided—all add force to his May 22, 2007 express withdrawal of all earlier objections as the manifestation of his desire to move the case forward and have it decided on the record as it stood. We reject this assignment of error for these reasons.

## DISPOSITION

We affirm the trial court grant of the summary judgment in all respects. We assess all costs of court to the plaintiff, Marcellus Breach.

**AFFIRMED.**

---

[4]After the trial court's April 4, 2007 determination that the defendants had sufficiently complied with Breach's discovery demands, he continued to file pleadings addressing discovery issues. On April 9, 2004, he filed an objection to Dr. Tassin's affidavit, suggesting that it was untimely "especially when no discovery has been allowed." On that same day, he filed additional pleadings asserting numerous procedural complaints, including lack of discovery. On April 19, 2007, he filed a pleading renewing his request for production of documents with regard to medical treatment, but particularized the request to a June 2006 grievance pertaining to his claim that Dr. Tassin had recommended surgical repair of his hernia. On that same day, he filed a separate motion seeking additional time to file an opposition to the motion for summary judgment which was then scheduled to be heard on May 15, 2007. This motion, as well as an April 28, 2007 motion to continue the summary judgment hearing, was granted by the trial court, and the summary judgment hearing was reset for June 12, 2007. On May 8, 2007, Breach filed a 133-page brief in opposition to the motion for summary judgment. In that brief, the only matter relative to discovery mentioned was a complaint for lack of production of a portion of the grievance document.

9

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal, Rule 2-16.3.