**REVISED December 10, 2019**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
December 10, 2019
Lyle W. Cayce
Clerk

No. 19-30483
Summary Calendar

RICHARD HOLLYFIELD,

      Plaintiff–Appellant,

v.

JACK HURST; PORCHEA JACKSON, incorrectly named as Nurse Jackson;
JUSTIN DEVILLE,

      Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:17-CV-84

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.

PER CURIAM:*

      Richard Hollyfield sued the medical staff at Allen Correctional Center (ACC) under 42 U.S.C. § 1983, in connection with the care he received at that facility. He asserted that deliberate medical indifference resulted in violations

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of the Eighth Amendment.  He also sued under Louisiana law, asserting a negligence claim for failing to provide reasonable medical care.  The district court granted summary judgment to the medical staff on both claims.  We affirm.

**I**

In May 2016, following hernia surgery repair, a medical resident at the University of New Orleans Hospital allegedly crushed Hollyfield's scrotum. Hollyfield was then transferred to the Elayn Hunt Correctional Center (EHCC) medical unit.  The physicians at EHCC ordered Hollyfield a scrotal support device; they also checked to see if he had received the nerve block ordered by his surgeon.  On May 31, 2016, Hollyfield arrived at ACC.

ACC's medical staff discontinued the Neurontin prescribed by Hollyfield's surgeon even though Hollyfield repeatedly complained of pain and requested that the staff follow his surgeon's orders.  Medical staff also initially supplied Hollyfield with a different scrotal support device than originally prescribed by his surgeon.  Hollyfield requested to be moved to a dormitory closer to the cafeteria and pill station because of the pain he experienced from walking.  Hollyfield lived in one of the dormitories farthest from the cafeteria, roughly one-third of a mile away.  ACC physician Jack Hurst and ACC health services administrator Justin Deville refused this request.  Hurst allegedly told Hollyfield he "would have more than just his nuts hurting" if he brought it up again.  Hollyfield's request for a wheelchair was also denied.

Hollyfield attended several sick calls through the beginning of June because of his testicular pain.  But he alleges that Hurst and Nurse Porchea Jackson failed to give him adequate medical treatment and at times refused to see him at all.  He recounts that Hurst mocked him.  For instance, Hurst wrote that Hollyfield's "sideshow behavior is worthy of [a] Hollywood Oscar."

No. 19-30483

Hollyfield alleges that on June 8th, he had other inmates help him to his unit captain's office. Hollyfield told his unit captain about the testicular injury and the pain incurred from having to walk so far to both the cafeteria and medical services. Hollyfield then showed the unit captain his injury. According to Hollyfield, the unit captain called someone and told them that he, the captain, suspected internal bleeding. That person came to the unit captain's office with a wheelchair and took Hollyfield to the area where medical attention was to be provided. Nonetheless, Hollyfield maintains that Hurst and Jackson refused to treat his pain or otherwise provide him needed medical attention for the rest of the time that Hurst and Jackson were at the facility. Hollyfield's unit captain did have Hollyfield moved into the medical tier, right next to the cafeteria and pill station. Hollyfield continued to file complaints about his lack of medical care.

Hollyfield's medical records paint a different picture of his treatment. The medical records reflect that the medical staff provided Hollyfield significant treatment and care. For instance, the records show that he was assessed by Hurst on May 31st and June 2nd. As a result of those assessments, Hurst created a chronic care treatment plan for Hollyfield, which included a referral to psychiatry. This referral resulted in prescriptions to treat Hollyfield's post-traumatic stress disorder and depression. Although Hurst discontinued Hollyfield's Neurontin prescription, Hurst renewed half a dozen other medications for Hollyfield, including Flanax for pain relief. Hurst prescribed a scrotal support device—though different from the one ordered by Hollyfield's surgeon—which Hollyfield filled on June 4th. The medical staff also prescribed new medications to Hollyfield, including a 30-day course of Naprosyn for pain relief on June 8th. Hollyfield appears to have been refusing some of his medications in response to changes in those medications. On June

3

No. 19-30483

9th, the medical staff performed chest X-rays, which showed "no acute abnormalities." In response to another sick call on June 30th, Hollyfield was given Tylenol and ice packs. Jackson recommended Amitriptyline for Hollyfield's pain on July 5th, which was approved on July 11th. Hurst's employment with ACC was terminated on July 5, 2016. Accordingly, Hurst's overlap with Hollyfield at ACC was roughly one month.

Following the termination of Hurst's employment, a nurse examined Hollyfield. The nurse noted swelling to one of Hollyfield's testicles, ordered a course of Motrin, and referred him to the new physician, Dr. Eric Chatman, for an evaluation. Chatman granted Hollyfield's request for the scrotal support device ordered by Hollyfield's surgeon, ordered a urology consultation, and prescribed another course of Naprosyn. After Hollyfield made additional sick calls, Chatman noted that treatment options were limited at ACC and discussed the possibility of a medical transfer with Hollyfield. Hollyfield was then taken to EHCC, where he received a consultation with the surgical clinic on August 8th and a course of new pain relievers. Afterwards, Hollyfield was permanently transferred to Robert LaSalle Correctional Center in September 2016.

Hollyfield exhausted his administrative remedies against Hurst, Jackson, and Deville and then sued in federal district court. The three defendants moved for summary judgment, which was granted by the district court. This appeal followed.

## II

This court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court.[1] Summary judgment

---

[1] *Prospect Capital Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 756-57 (5th Cir. 2016); *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).

4

is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  In reviewing the presence of a genuine material dispute, this court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[3]  The court considers the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of the nonmovant.[4]  If there are any genuine disputes of material fact, summary judgment must be denied.[5]  In reviewing grants of summary judgment, this court is "not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record."[6]

## III

Hollyfield claims he is entitled to damages under 42 U.S.C. § 1983 because the medical care he received from the medical staff at ACC was so deficient that it violated his rights under the Eighth Amendment.  When state-prison medical staff are deliberately indifferent to a prisoner's medical needs, they violate the Eighth Amendment, which can give rise to a claim for damages under 42 U.S.C. § 1983.[7]  A prison official acts with deliberate indifference only if he both (1) "knows that inmates face a substantial risk of serious harm" and,

---

[2] FED. R. CIV. P. 56(a).

[3] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[5] *Anderson*, 477 U.S. at 255.

[6] *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (citation omitted).

[7] *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Brown v. Plata*, 563 U.S. 493, 511 (2011) ("A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.").

(2) "disregards that risk by failing to take reasonable measures to abate it."[8] To prove this second element, a plaintiff must show that the prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[9]  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."[10]

Here, although Hollyfield alleges that medical staff at ACC refused to provide adequate treatment and ignored complaints, his medical records indicate otherwise.  Specifically, Hurst and Jackson prescribed various pain medications, supplied Hollyfield with an athletic supporter, performed an x-ray, referred him to a psychiatrist, created a chronic pain treatment plan, and provided him with ice packs.  Although these treatments may or may not have been the best course of action for treating Hollyfield's testicular pain, they show that Hurst and Jackson were at least not ignoring his medical complaints and were not refusing to treat him.  In fact, on a day where Hollyfield alleged that Hurst refused to treat his pain adequately, the medical records reflect that Hurst had seen Hollyfield and prescribed Naprosyn for his pain.

Rude or insensitive behavior towards prisoners is disgraceful conduct, but it does not alone rise to the level of deliberate indifference.[11]  Moreover, "mere threatening language and gestures" by prison staff, while inappropriate,

---

[8] *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

[9] *Id.* (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)).

[10] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[11] *Atkins v. Lofton*, 373 Fed. App'x 472, 473 n.1 (5th Cir. 2010); *see also Brown v. Plata*, 563 U.S. 493, 510 (2011) ("Prisoners retain the essence of human dignity inherent in all persons.").

do not alone violate the Eighth Amendment.[12]  Here, although Hurst may have made several rude and insensitive remarks, they do not illustrate deliberate indifference when Hollyfield was also receiving medical treatment.  Similarly, although Hurst allegedly told Hollyfield he "would have more than just his nuts hurting" if he brought up moving dormitories again, this threat, by itself, does not show deliberate indifference violative of the Eighth Amendment.

## IV

Hollyfield claims he is entitled to damages under Louisiana law because the medical staff at ACC failed to provide him with reasonable medical care.  Specifically, Hollyfield alleges that the ACC medical staff unnecessarily caused him pain and suffering because they failed to respond to his pain adequately, even refusing to do such simple acts as granting him a wheelchair or moving him to the medical tier of the prison.  Hollyfield contends that "[a]n average juror knows that a swollen testicle is painful and that intestines protruding into a testicle is painful."

Under Louisiana law, prison authorities owe a duty to  provide inmates with reasonable medical care.[13]  Generally, for claims of failing to provide reasonable medical care, a plaintiff is unable to sustain his burden of proof without expert testimony.[14]  But expert testimony is not required when "a lay jury can perceive negligence in the charged physician's conduct as well as any expert can."[15]  These situations can include a "[f]ailure to attend a patient when the circumstances demonstrate the serious consequences of this failure,

---

[12] *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (citation omitted).

[13] *Harper v. Goodwin*, 930 So.2d 1160, 1163 (La. App. 2d Cir. 2006); *Robinson v. Stalder*, 734 So. 2d 810, 812 (La. App. 1st Cir. 1999).

[14] *Pfiffner v. Correa*, 643 So.2d 1228, 1234 (La. 1994).

[15] *Id.*

No. 19-30483

and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary."[16]

Here, the medical staff provided Hollyfield with various forms of pain medication and a scrotal support device. A lay juror, having no instruction in medicine, would not know the appropriate pain medication or other course of treatment for Hollyfield's condition. Only an expert would be able to inform a lay juror whether the treatment provided by Hurst and Jackson failed to constitute reasonable medical care. Since Hollyfield does not present any expert testimony that his treatment was negligent, he is unable to meet his burden of proof on summary judgment for this claim.

\*　　\*　　\*

The district court's judgment is AFFIRMED.

---

[16] *Id.*